**KIGHT, Plaintiff-Appellant v. BOREN et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 3532.   Decided March 25, 1943.

Coughlin, Ogier & Lloyd, Columbus, Benson Ogier, Columbus, of counsel, for plaintiff-appellant.

Hoover, Hedges & Tingley, Columbus, for defendants-appellees.

**OPINION**

By HORNBECK, J.

This is an appeal from a judgment of the Common Pleas Court, Division of Domestic Relations, Franklin County, from a judgment dismissing the second amended petition of plaintiff entered by the trial judge upon motion for dismissal at the conclusion of the plaintiff's testimony in chief. The plaintiff sought to open up certain divorce proceedings which she had instituted against her husband, William B. Kight, and for a grant of alimony for the reason that the defendant in the divorce proceeding had worked a fraud upon her whereby she was prevented from seeking alimony.

A divorce decree was granted to the plaintiff for the aggression of her husband on December 6, 1929. William B. Kight died on or about February 20, 1935, and defendant, George R. Hedges, is the duly appointed and acting administrator with the Will annexed of the estate of said decedent.

The petition avers in substance that prior to the filing of the divorce petition, decedent informed plaintiff that he had through business reversals, lost all the money which he and the plaintiff had accumulated during their twenty-five years of married life; that notwithstanding this information she worked and supported her husband during which time he used abusive tactics toward her which eventually made living with him unbearable and forced her to procure a divorce; that during the marital relationship, plaintiff had given to her husband, bonds which she owned in the value of $4,000.00 and a diamond ring of the value of $1,000.00 which, when she demanded them of him, he stated had been converted into cash which had been lost; that they had a joint savings account in the sum of $6,000.00 which her husband withdrew without her consent or knowledge and later informed her that this sum had been lost; that, although, her husband claimed to be completely destitute, she learned since his death that at the time she secured a divorce from him, he had more than $5,000.00 in a checking account, had in his possession the aforesaid diamond ring, and large sums of money and other property all of which he owned at the time he induced her to believe that he was penniless so that she would not seek alimony. Plaintiff further avers that her husband knowingly made the aforesaid representations intending that she rely upon them and that she did rely upon them to her loss and for that reason the property rights of the parties were not determined in the original divorce hearing and the question of alimony was not considered.

The plaintiff further says that because of the aforesaid representations, she also loaned her husband the sum of $500.00 which on February 20, 1935, she requested the administrator to pay. That

on or about March 18, 1935, she signed a paper which had been prepared by George R. Hedges, as administrator of the estate of William B. Kight, which he informed her was a statement showing said amount was due her as a creditor of said estate and that on or about the same date she also signed another paper which she later has been informed purported to release all of her claims of any kind or nature against said estate; that at the time of signing said purported release, she had no knowledge that all or most of the assets of the estate of William B. Kight were moneys which he had in his possession at the time she secured her divorce; that there was no consideration for releasing the claim of which she had no knowledge at the time of giving said receipt, which is purported to be a release of all her claims; that the $500.00 paid to her was due her as a debt and so recognized by the administrator. The prayer in part is for the cancellation of that part of the receipt for the $500.00 paid to plaintiff which purports to be a release of any claim against said estate other than that which is predicated upon its indebtedness to her for the $500.00.

The court granted the motion to dismiss upon the proposition that the plaintiff had failed to make a prima facie case of the alleged fraud and not upon failure to show ground for cancellation of the release incident to the $500.00 payment. So that, no question is urged or discussed as to the law of the case upon the averment of the second amended petition relative to the $500.00 receipt and the prayer for cancellation of that part thereof which purports to be a release of all claims of the plaintiff's against the estate of William B. Kight, deceased.

Two errors are assigned:

1. The sustaining of the motion of defendant to dismiss plaintiff's cause of action.

2. In refusing to admit certain evidence offered by the plaintiff.

Upon the first error assigned, plaintiff's brief devotes considerable attention to the burden of proof upon the plaintiff to support her claim of fraud whether by clear and convincing evidence or by a preponderance of the evidence.

The trial judge upon this subject only made one observation from which we may determine his view of the matter. On page 74 of the record the court made this observation:

"Mr. Ogier, I do not feel that you have established the element of fraud here by a special degree of proof so far in this case."

We assume that this indicates that there was a degree of proof required to be produced by the plaintiff other than ordinarily required. namely. a preponderance of the evidence and that another and higher degree of proof should be forthcoming.

Clear and convincing evidence was the burden which the plaintiff was required to sustain in this action to vacate and open up a former judgment of the court. The authorities cited in the brief of defendant are in point, namely, Willis v. Baker, 75 Oh. St., 291, McAdams v. McAdams, 80 Oh. St., 232-243, In the Matter of Veselich, 22 Oh. Ap., 528, Porter v. Doppes, 12 Oh. Ap., 291, 23 O. Jur., 1255.

The trial judge in passing on the motion of defendant to dismiss, made pertinent and sound observations both as to the factual situation and as to the law controlling his action upon the record. He said,

"It is up to Mrs. Kight to establish those facts (that she was deceived and defrauded and that her husband made fraudulent misrepresentations to her) by a degree of proof which would be sufficient to put you (the defendant) on defense at least in the element of a fraud and I recognize the position that Mr. Ogier is in. It is very difficult to establish fraud in this type of case especially where one of the parties has deceased and where you have to rely upon the testimony of a witness who might be the one upon whom the fraud is supposed to have been committed. To have witnesses to this alleged fraud, it would have been necessary that he (the husband) made statements to the effect that he had no money. It is a fact that he made statements to other people. Unless they were made to her for the purpose of misleading her and she relied upon those statements and as a result of these false representations she had been defeated of her right to claim alimony."

The foregoing epitome of the trial judge fairly analyzes the gist of plaintiff's testimony.

The various witnesses who testified knew Mr. and Mrs. Kight during their married life and subsequently. Some of them testified to acts with which the husband was chargeable, tending to show misconduct on his part toward his wife. during the marital relationship, some overt acts which the witnesses had observed, some confessions and admissions, on the part of the husband of misconduct toward his wife.

In probability, this testimony was not required because the plaintiff in her divorce proceeding had established gross neglect on the part of her husband and it had been so formally adjudged. She then had the basis of an alimony award if under the law it could be made to her. Further evidence as to the aggression of the husband was but cumulative and added nothing which could be helpful to the court in fixing the amount of an award of alimony to the plaintiff.

By an officer of the Huntington National Bank and an officer of the Buckeye Building & Loan Company, it was developed that on

or about the date of the decree of divorce to the plaintiff, her husband had on deposit at these institutions upwards of $8,000.00; that as late as May, 1934, he had a certificate of deposit with the Buckeye State Building & Loan Company in the amount of $6,000.00 which he had on that date cashed. The answer of defendant-administrator admits that the inventory of his decedent's estate disclosed that he died possessed of $12,493.71 personal property and real estate in Indiana of the value of $3920.00. It is conceded that plaintiff knew of the ownership of the farm and she claims she released her dower interest therein because it was represented to her that it was the sole possession of her husband.

There is an abundance of testimony to the effect that the defendant owned and possessed sums of money in the amounts heretofore stated at the time the divorce proceeding was pending and upon the date that the decree was granted to the plaintiff. There is also considerable testimony to the effect that plaintiff's husband in his lifetime had made false statements in many respects to his wife and if the only question to be determined was whether or not he was guilty of reprehensible conduct as a husband, we would not have much trouble in reaching a judgment.

It is fundamental, that a party who seeks relief by legal process must make proof of the basic facts essential to establish the right to such relief. Coming immediately to the obligation of the plaintiff in this case, it was essential that she establish by clear and convincing proof that the misrepresentations alleged, or some of them, were made, that they were false, that they were known to be false when made, and made to the plaintiff for the purpose of inducing her to act upon them and that she did act upon them to her detriment.

A very close study of the record is convincing that upon one of the essentials of plaintiff's proof, namely, that her husband made the misrepresentations of fact or some of them, to her, there is the following meager testimony of Mrs. J. S. Gibson, a witness for the plaintiff, testifying to conversations that she had with Mr. Kight subsequent to the divorce:

"He told me that he told her that he didn't have any money, and that he let her help him and that he was sorry for it, but he didn't tell me how much money he had, * * *."

The import of this statement was admissible against the estate of Kight but it is obvious that it falls far short of essential proof by the requisite degree. If Mrs. Bowen had been permitted to state that the plaintiff was present during the conversation with Mr. Kight which she narrated, there would have been more proof upon the essential elements of plaintiff's case. No doubt, this failure of

proof is the result of her incapacity to testify because of the prohibition §11495 GC, which we hereinafter consider.

We are, therefore, of the opinion that upon the testimony admitted by the trial judge he was correct in his action in sustaining the motion of the defendant to dismiss plaintiff's petition at the conclusion of her case.

Upon the second assignment it is urged that the court erred in refusing to permit a witness, Mrs. Charles E. Bowen, who had testified on behalf of the plaintiff, to be recalled as a witness after she had been released because she was present in the court room during the taking of the testimony subsequent to her dismissal as a witness. The purpose of again placing her on the stand was to establish that certain statements made by William Kight to the witness were made in the presence of Mrs. Kight. Counsel for the plaintiff when he proffered the testimony recognized that its admissibility was within the discretion of the trial judge, there having been an order of separation of the witnesses. This being true, there was no prejudicial error in the refusal of the court to accept the testimony.

Counsel for plaintiff, in the main, recognized and accepted as controlling the bar of §11495 GC to the reception of the testimony of the plaintiff as to acts done, transactions had, or conversations engaged in, between herself and her husband inasmuch as one of the defendants, and the only defendant appearing to contest plaintiff's cause of action, was an administrator. To save the question, however, in one instance Mrs. Kight, being on the stand, her counsel inquired of her as to statements made by her husband to her, relative to the subject matter of her charges of fraud in the amended petition which the court, on objection, refused to receive.

Difficulties arise, by the questions now raised on this appeal, the first of which is the effect of §11495 GC in conjunction with §11988 GC, the former section being a positive prohibition against a party testifying when the adverse party is an executor or administrator unless within the specifications of the statute. The latter section permits the parties to testify, notwithstanding, their marital relation, in all proceedings under the divorce and alimony chapter of the code. It is probable that no conflict was contemplated between the provisions of these two sections of the code for the reason that it was not anticipated that any case would arise where alimony would be awarded after the death of a party to the marital relation.

Under the former judgment of this court it becomes necessary to meet the situation which has now arisen as to the competency of the testimony of the plaintiff as to the subject matter which but for §11988 GC would clearly be inadmissible because of the disqualification of the witness.

It is urged that the administrator is not a necessary party to this proceeding and, therefore, cannot, in fact, be adverse in relationship to the plaintiff though nominally a party. We are not in

accord with this conclusion. While it is true that the action of the court which is determinative of the primary rights of plaintiff is predicated upon the status of the parties during their life time, it is also true that if the plaintiff be granted the relief sought, the money, to pay her judgment, must come from the estate of decedent whose personal representative the administrator is.

"It has generally been held that whenever the assets of a deceased person are concerned, a suit cannot proceed to final decree without a personal representative within the jurisdiction, appointed by a competent court." **18 O. Jur., §415, p. 516,** citing McArthur v. Scott, 113 U. S., 340.

The purpose of this section, if applied to preclude a party testifying when the adverse party is an administrator or executor, is to prevent the party who is alive from having unlimited opportunity to make statements which cannot be denied because of the death of the person who would be in the best position to deny them. If in actions of the nature of the instant case the statute be not given application, the invitation to fraud and perjury is apparent. This observation is in no sense made with any purpose to reflect upon the integrity of her testimony if it were accepted. The statute must be given consideration with respect to its application to all cases coming within its scope. There is an adverse relationship of the parties, plaintiff and defendant, the administrator, in fact, as well as nominally.

Examination of the briefs in connection with the transcript of docket and journal entries and the bill of exceptions discloses that the briefs of this case were filed before the bill of exceptions was signed by the trial judge. The brief of defendants-appellees emphasizes the fact that there is no bill of exceptions and that the questions raised upon the appeal can only be exemplified by such bill. However, when the papers were brought to our attention a bill of exceptions is found therewith.

We do not find any specific objections to the bill but observe several irregularities in connection therewith. The certificate attached to the bill is regular in form, recites that the bill of exceptions was filed, presumably with the clerk, although it does not so state; that the clerk of said court notified defendant of the filing of the bill of exceptions; no objection or amendment having been filed, said clerk on the 11th day of August, 1942, presented same to the trial judge for allowance and signature as provided by the statute. There is, however, no notation that the bill was filed with the clerk of courts and no evidence that it was transmitted to the defendant for objection or amendment. The certificate continues and recites that the court did on the 19th day of January, 1942, obviously meant to be 1943, certify that the foregoing was all of the evidence offered, etc. The bill is signed by the trial judge.

Our conclusion of the whole matter is that the filing of the bill with the trial judge was equivalent to filing it with the Clerk of Courts. That, although, there was an irregularity in failing to give defendant ' opportunity to present objection or amendment to the bill, this would not be jurisdictional, inasmuch as there was no formal motion to strike the bill because of desire of defendants' counsel to interpose any objection or amendment to the bill. Although the trial judge did not sign the bill for more than five months after he received it, which was within the time provided by the statute, this was a delay which may not be urged to the prejudice of the rights of the plaintiff. Hornbeck & Adams, Trial & Appellate Practice in Ohio, 269, citing **Traction Co. v. Ruthman, 85 Oh. St., 62, Porter v. Rohrer, 95 Oh. St., 90.** We have, therefore, considered the bill of exceptions for the reason that the irregularities therein are not, upon the form of the objection interposed thereto and under the statute, sufficient to require us to strike the bill.

The judgment will be affirmed.

BARNES, P. J., and GEIGER, J., concur.