Fisher, Appellee, *v.* Fisher, Appellant.

[Cite as Fisher v. Fisher, 8 Ohio App. 2d 105.]

(No. 27582—Decided October 20, 1966.)

*Mr. Leo E. Rattay,* for appellee.

*Messrs. Rosenthal, Roesch, Buckman & McLandrich,* for appellant.

*Per Curiam.* This is an appeal on questions of law from an order and judgment of the Court of Common Pleas filed for journalization with the clerk of that court on July 17, 1965, and entered upon the journal of such court in Divorce Journal 366, page 2042.

The pertinent facts are that on February 1, 1963, plaintiff filed in the Court of Common Pleas her petition for divorce, custody of minor children and other relief; and service was duly had upon the defendant. The defendant being in default of answer or other pleading, the cause came on to be heard on April 25, 1963, as an uncontested case, and, on May 10, 1963, the court granted to plaintiff a divorce from the defendant and in the decree incorporated a separation agreement entered into by the parties on January 28, 1963, and found that the separation agreement so entered into was fair, just and equitable and ordered the parties to carry out the terms thereof.

Approximately one year later, on April 27, 1964, plaintiff appellee herein, filed a petition to vacate decree or in the alternative to modify order; service was had upon the defendant,

appellant herein; and on June 17, 1964, he filed.his answer to the plaintiff's petition, consisting of three defenses.

Examining the petition to vacate, we note that in the first paragraph thereof plaintiff pleads facts with respect to the marriage of the parties and the birth of three children.

. In the first sentence of paragraph two, she states that in the year 1962 she instituted her action for divorce. This definitely is contrary to the record. Her divorce action was filed on February 1, 1963, as appears from the records of this action.

She further alleges that she and her former husband had some negotiations with respect to property rights, alimony, support and custody of minor children; and that these negotiations culminated in a separation agreement executed by the parties on January 28, 1963.

Paragraph two of such petition contains the following:

"During these negotiations, * * * the defendant, * * * failed to disclose his full assets and resources, all of which were accumulated during the marriage and by such failure defrauded the plaintiff herein; and fraudulently induced the plaintiff to acquiesce in a separation agreement. * * *."

In paragraph three, plaintiff states "that as a result of this fraudulent inducement that the separation agreement dated January 28, 1963, (1) should be declared a nullity, (2) that a full disclosure should be made to the court, setting forth in full all secreted assets of the plaintiff [sic] and (3) that the court vacate its order dated April 25, 1963 * * *."

In the next paragraph she states that the defendant made certain representations, which was a further inducement for the plaintiff to execute the aforesaid separation agreement. Such representations are set forth as follows:

"(a) that said defendant would pay any and all expenses involved in the college or university education with respect to the minor child, Rebecca Jo Fisher; and

"(b) that defendant would pay any and all expenses with respect to the college or university education of Margaret Ellen Fisher and Geoffrey Scott Fisher, the other minor children of the marriage; and

"(c) that defendant would create a trust fund with certain stocks and bonds and certain legacies anticipated by the defendant and subsequently received by the defendant for the

education, support and medical expenses of said minor children.''

In the next paragraph she states:

''Plaintiff further states that by reason of the fraudulent inducement made by the defendant, that the separation agreement dated January 28, 1963, should be declared void and of no force and effect; and further that by reason 'of such fraudulent representations by the defendant, great and irreparable injury and deprivation is resulting to her and the minor children who are in her custody.''

The prayer of her petition is as follows:

''Wherefore, plaintiff prays that the decree of the Common Pleas Court dated April 25, 1963, be vacated and set aside; or that in the alternative, that the separation agreement dated January 28, 1963, which was incorporated into the order of the court of April 25, 1963, be declared null and void and of no effect; and that the court amend and modify its orders with respect to alimony, support, medical expenses, educational expenses and educational trusts; and for such other and further relief as may be just and equitable in the premises.''

The defendant filed an answer on June 17, 1964, and without attempting to set it out at length, it consists of certain admissions with respect to the marriage of the parties, birth of the children and that a divorce action was instituted by plaintiff. The answer specifically ''denies that he failed to fully disclose his assets and resources or has in any manner defrauded the plaintiff, or fraudulently induced her to execute the separation agreement.''

The answer further pleads that ''he has prior to the execution of the January 28, 1963, separation agreement, made a full disclosure to the plaintiff.''

He further avers that the separation agreement dated January 28, 1963, contains provisions relative to the education of the children as it relates to the subsections (a), (b), and (c) of plaintiff's petition as above set forth. Then follows what amounts to a general denial of all of plaintiff's allegations not admitted to be true.

The answer contains the following defenses:

''SECOND DEFENSE

''Further answering, this defendant avers that the plain-

tiff's petition to vacate decree, or in the alternative to modify order, does not state sufficient facts to permit the court to grant the relief sought by the plaintiff.

"THIRD DEFENSE

"For his third defense herein, this defendant avers that this court does not have the authority or power to grant to the plaintiff the relief sought in her motion to vacate decree or to modify order."

Then follows a prayer that upon a hearing of the matter the relief sought by plaintiff be denied.

Following the hearings conducted in the matter, the trial court signed and filed for journalization on July 17, 1965, the following journal entry, viz:

"This cause came on for hearing on the petition of the plaintiff to vacate decree, or in the alternative to modify an order of this court issued on April 25, 1963, and the evidence, both parties appearing personally and represented by counsel.

"This court has heretofore, upon the timely request of the defendant, stated in writing the conclusions of fact found separately from the conclusions of law; and the same are herewith incorporated herein.

"The court further finds that while there were material misstatements and misrepresentations and a failure to disclose the earnings, assets and property of the defendant to the plaintiff, that public policy dictates that because of the innocent third party involved, to wit: the new wife of the defendant, that the divorce decree should not be vacated.

"However, the court further finds that the agreement, styled a separation agreement, which was executed on or about January 28, 1963, was executed by the plaintiff while she was under emotional stress and strain, and not cognizant of any of her rights as a party to said agreement; and further that said agreement was executed by her upon the material misstatements, misrepresentations, and fraud perpetrated by the defendant; and executed by her without the knowledge of a full and complete disclosure of the assets of the marriage, or under the control of the defendant herein; and further that she was not represented by counsel, and was denied the right to counsel be-

cause of material misrepresentations of her rights to counsel made by the defendant herein.

"The court therefore finds that the separation agreement dated January 28, 1963, is null and void, and should be so declared.

"It is, therefore, ordered, adjudged and decreed that the order of the court entered on April 25, 1963, is hereby modified as follows: [then follow paragraphs (a) to (g), inclusive containing specific provisions modifying the original order of the court]."

And the journal entry concludes with:

"It is further ordered, adjudged and decreed that all of the foregoing modifications and the implementation thereof are hereby reduced to judgment, for which execution may issue.

"It is further ordered, adjudged and decreed that the defendant pay the costs of these proceedings, for which judgment is rendered and execution may issue.

"Exceptions to defendant."

Appellant sets forth ten assignments of error as a basis for relief. Upon examination thereof, we find it is apparent that they lend themselves to consideration in groups, and they will be so considered. The first of such groups involves:

ASSIGNMENT OF ERROR No. I

"The court erred in asserting jurisdiction of the plaintiff's petition to vacate decree or in the alternative to modify order."

ASSIGNMENT OF ERROR No. II

"The court erred in failing to dismiss the plaintiff's petition and/or motion for its failure to state a cause of action as alleged in defendant's second defense."

ASSIGNMENT OF ERROR No. VIII

"The court erred [assuming that the defendant had perpetrated a fraud] in granting any relief to the plaintiff in this cause since the sole issue before the trial court related to the vacation of the court's previous decree."

The first assignment of error involves the jurisdiction of the court to hear the petition to vacate or to modify the decree journalized on May 10, 1963, which petition was filed approximately a year later, three terms after the original decree. The

jurisdiction of the court, if it exists at all, is embodied in Section 2325.01 of the Revised Code, which provides:

"The Court of Common Pleas or the Court of Appeals may vacate or modify its own final order, judgment, or decree after the term at which it was made:

"(A) By granting a new trial of the cause, within the time and in the manner provided in Sections 2321.19 and 2321.21 of the Revised Code.

"*  *  *

"(D) For fraud practiced by the successful party in obtaining a judgment or order;

"*  *  *  *"

It is to be observed that the time for granting a new trial pursuant to either section of the Revised Code enumerated in subparagraph (A) above set forth had long since passed. Because of the matters pleaded in the petition to vacate, the ground for the vacation of the decree must be found, if at all, under subparagraph (D) of Section 2325.01, Revised Code, to wit:

"(D) For fraud practiced by the successful party in obtaining a judgment or order;"

It is evident from an examination of the record that the court misconceived that the case at bar was controlled by the pronouncement of the Ohio Supreme Court in the case of *Jelm* v. *Jelm*, 155 Ohio St. 226. What the Supreme Court said in the syllabus of that case is sound in every respect and is to be accorded its full measure of authority in the courts of this state. And except for the proposition that the trial court herein was the trial court in *Jelm* v. *Jelm, supra,* there is nothing in the *Jelm case* that bears any resemblance, even remotely, to the case at bar.

In the *Jelm case,* there is no question that the successful party perpetrated a rank fraud upon the court, to make it applicable. The best that can be said in the case before us is that *defendant* husband perpetrated a fraud on his *plaintiff* wife who got the decree. It is difficult for us to understand how the trial court could possibly be lulled into such a situation.

Since the jurisdiction of the court is questioned in order to justify its exercise thereof, we do what the trial court did not do; in our quest of finding a solution thereto, we are directed to a citation involving a "Concealment or Misrepresen-

tation of Financial Condition by Husband as Ground for Relief.''

Specifically, the fraud alleged in this case involves ''Concealment or Misrepresentation of Financial Condition by Husband'' as ground for relief. In the discussion of the subject ''Divorce and Separation'' in 18 Ohio Jurisprudence 2d 83, Section 144, and dealing with the topic ''Conditions Warranting or Affecting Right to Modification,'' we are directed to an ''Annotation'': ''Concealment or Misrepresentation of Financial Condition by Husband or Wife as Ground of Relief from Decree of Divorce as Regards Alimony or Property Settlement,'' in 152 A. L. R. 190.

At pages 195-96, we find it is said that:

''* * * it is generally held that where a husband or wife has concealed property belonging either to such spouse or to the community estate, or has misrepresented his or her financial condition, as a result of which the alimony or property awarded is less or more than otherwise would have been provided for or accepted, the unoffending spouse is entitled, in the absence of specific equities tending to limit such relief, such as laches or negligence, to relief from the divorce decree as regards alimony or property rights.''

''* * * in the majority of cases, the courts, either directly or by implication, have, on one ground or another, rejected the arguments that the divorce judgment was conclusive, that the concealment or misrepresentation was intrinsic fraud, or that the attack was collateral.''

The supplement to the foregoing annotation includes one Ohio case, *Kight* v. *Boren* (1943), 39 Ohio Law Abs. 96. In that case, the ex-husband died six years subsequent to his wife's obtaining a divorce from him. After his death, the ex-wife made an application to open up the divorce proceedings in order for her to obtain a grant of alimony on the ground that her husband had misrepresented his financial status to her at the time of the divorce action, which prevented her from seeking alimony. The Franklin County Court of Appeals affirmed the lower court's decision not to reopen the case.

Paragraph two of the headnotes of the *Kight case* declares that:

''2. A plaintiff seeking to vacate a judgment of divorce

granted her upon the ground of alleged fraud of the husband in leading her to believe that by reason of business reversals he had lost all money accumulated by the parties in their lifetime whereby she was prevented from seeking alimony, must establish by clear and convincing proof that the misrepresentations alleged or some of them were made, that they were false, that they were known to be false when made, that they were made to the plaintiff for the purpose of inducing her to act on them and that she did act on them to her detriment.''

It can readily be seen that, although the facts in the case at bar differ somewhat from those of the *Kight case,* the issues are very similar in both cases and the ground upon which the *Kight case* was decided presupposes the power of the court to open a similar case if fraud can be shown to exist.

Since it has been noted above that in the majority of cases the courts have recognized that concealment of assets and misrepresentations was not intrinsic fraud and furnished the basis for reopening the divorce decree, it follows that in the case at bar the court did not err in asserting jurisdiction, and, therefore, assignment of error number one is overruled.

An examination of the petition to vacate herein filed discloses that plaintiff had pleaded affirmatively that there was concealment of assets and misrepresentation by the defendant to her injury; whether the proof adduced in support thereof will be found to be of the proper degree to enable plaintiff to maintain the issue must be left for later consideration. At this point in our inquiry we must and do conclude that the petition to vacate states a cause of action. Therefore, the second assignment of error must be overruled.

The basis for the next assignment of error under consideration—number eight—is that the sole issue before the trial court related to the vacation of the court's previous decree and that, assuming defendant perpetrated a fraud, the court erred in granting any relief to plaintiff in this hearing.

Section 2325.06, Revised Code, provides:

''The Court of Common Pleas or the Court of Appeals must try and decide upon the grounds to vacate or modify a judgment or order, before trying or deciding upon the validity of the defense or cause of action.''

The appellant argues ''that the trial court failed to do so.

In its entry, the trial court simply rewrote the separation agreement and, in fact, determined the issue on its merits without ever making a finding as to the grounds on which the previous judgment was to be vacated."

Section 2325.07, Revised Code, provides:

"A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered; *or, if the plaintiff seeks its vacation, that there is a valid cause of action.* When a judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment." (Emphasis added.)

In view of Section 2325.06, there is imposed upon the trial court a positive requirement—"the court * * *must try and decide upon the grounds to vacate or modify a judgment or order, before trying or deciding upon the validity of the defense or cause of action."

Under the procedure designed for hearings of a petition to vacate or modify a judgment or order, situations arise because of the grounds alleged as the basis for such vacation, as is true in this case, when the court is required to hear considerable evidence involving the merits, in order to determine whether the grounds for vacation do, in fact, exist. In such a hearing it becomes quite apparent to the trial court that, since the plaintiff was seeking the vacation or modification, she had a good cause of action under Section 2325.07, Revised Code.

In the case before us the trial court made no finding with respect to the provisions of Section 2325.06, Revised Code, that there were grounds for a modification, or that the plaintiff had a good cause of action as provided in Section 2325.07, Revised Code. The record discloses no such finding as to either of such sections.

Instead, the court proceeded to a full hearing of the merits of the cause and at the conclusion of the matter declared the separation agreement invalid and revised its terms, entering new orders, but did not set aside the divorce theretofore granted.

In view of the mandatory provisions of the Code above set forth, we conclude and therefore hold that it is error for the court to proceed to hear and determine the merits of the controversy upon which the judgment was previously entered. See,

*Bellows* v. *Bowlus*, 83 Ohio App. 90, paragraphs four, five and six of the syllabus.

Did the defendant, appellant herein, waive his rights when compelled to proceed under the rulings of the trial court? Reading the record in the case before us, we must answer that question with a resounding negation. Counsel not only called to the attention of the court what he expected the procedure to be —correctly and in detail— but was overruled and, therefore, had no choice in the matter.

Assignment of error number eight is well taken and was prejudicial to the appellant.

We now approach the next group of assignments of error to be considered together:

ASSIGNMENT OF ERROR No III

"The court erred in admitting evidence at variance with the petition."

ASSIGNMENT OF ERROR No. IV

"The court abused its discretion in permitting needless cross-examination."

ASSIGNMENT OF ERROR No. V

"The court erred in unnecessarily prolonging the proceedings."

A careful reading of the entire record discloses many instances where the court permitted evidence at variance with the affirmative allegations of the petition to vacate. Aside from this, however, is the straightjacket the court placed upon counsel for the defendant, as is demonstrated in the record where we find the following:

In the record, during the cross-examination of the defendant, we note the defendant's motion.

"Mr. McLandrich: Your honor, I am going to object. We are here on the motion [petition] to modify and vacate a decree. I think that all the evidence that is to be elicited should pertain to facts which occurred prior to the entry of that decree."

"The Court: Note your exception. Overruled."

Also, from the record, questions were put by plaintiff's counsel:

"Mr. McLandrich: Objection, your honor.

"The Court: The court will assume that you are objecting to each and every question and I am overruling you in this

regard and you may note an exception to each question, so we won't stop every minute.

"Mr. McLandrich: Thank you, your honor.

"The Court: I am overruling every question. Unless I sustain the objection, we will assume that it is overruled.

"As you go along, I will be following the evidence. If I hear anything that I think is objectionable, I will sustain the objection. I will assume that you are objecting to each and every question."

This type of thing occurred several times during the entire series of hearings. In the face of such a ruling of the court, any lawyer who is interested in preserving a proper, logical record for presentation to a reviewing court would require character traits and qualifications that human mortals do not possess.

The travesty of procedure such as this is exemplified in the record after both sides rested, when counsel for the defendant sought to protect his client's rights and moved the court to strike from the record any evidence with respect to certain matters admitted by the court over his objections, that is at variance with the petition to vacate. Nothing to indicate a ruling by the court. After a lengthy dissertation by the court, which extended over several pages of the record, counsel for the defendant again addressed the court:

"Mr. McLandrich: I had previously posed a motion, and counsel had made some comments on it. The court had, too. [gratuitous understatement] I don't recall whether the court has made any ruling on my motion to exclude evidence, or is simply taking the motion under advisement?

"The Court: What evidence?

"Mr. McLandrich: The evidence I objected to during the trial that related to matters other than——that is at variance with the allegations of the petition, that the husband failed to disclose, that being the basis on which the petition seeks to have the decree vacated or modified.

"The motion is to the effect that only evidence relating to facts which she alleges in her petition or facts incident to those allegations are the facts which should be permitted into the record and considered by the court in arriving at its decision, and that all the other testimony that was let in over objection

of myself as counsel for Mr. Fisher, relating to other extrinsic matters, be excluded from the court's consideration.

"Mr. Rattay: Your honor, as I just said before, I think that since fraud is a factor in this case, the court has wide latitude. I don't know what evidence Mr. McLandrich is asking the court to strike from the record, I know at the time objection was made, the court either overruled it or sustained it, and there are no open questions on the matter of evidence."

At the conclusion of the foregoing, the court again goes into a discussion of the *Jelm case,* but no ruling on the motion. It is understandable. From the manner in which the trial court handled this trial, no one—neither counsel nor the judge —would know without resort to the transcript. And even under those circumstances, could anything accurate be ascertained, since the court assumed that defendant objected to every question?

As to assignments of error numbers IV and V above set forth, the harassment of the defendant by needless cross-examination, under assignments number IV and under number V, protracting the hearing from July 8, 1964, to May 14, 1965.

The record discloses that there were hearings beginning July 8, 1964; October 22, 1964; December 2, 1964; December 16, 1964; March 26, 1965; and May 14, 1965. In other words, the hearing started on July 8, 1964, and the matter was further heard and continued on each of the aforesaid dates.

The hearing began on July 8, 1964, with the cross-examination of the defendant, and such cross-examination ended at the next hearing on December 2, 1964. Defendant was examined by his own counsel on direct on December 2, 1964.

Plaintiff's direct examination began on December 2, 1964; the cross-examination of plaintiff on December 16, 1964; and further redirect on that date.

The record, at pages 184 to 192, is taken up by one of the numerous dissertations by the court, pointless, needless, time-wasting and unavoidable by anyone except by the court, because of its captive audience.

The part of the record, narrative in form, relating to the hearing of March 26, 1965, indicates that this hearing was devoted to another barrage of cross-examination of the defendant. How many pages thereof is therefore unknown.

The May 14, 1965, hearing indicates a brief examination of defendant on redirect (two pages) and recross-examination of the defendant (record pages 268 to 294).

The record closes with another of the judge's dissertations, from page 295 to page 305, including therein the motions made by counsel for defendant, with no rulings by the court.

This aspect of the so-called trial given to the parties is extremely serious for several reasons. It certainly challenged the ability of the court to control the cross-examination of either party, particularly the defendant, to avoid needless repetition of the same matters testified to on several occasions; and it would certainly challenge the ability of any judge to remember what has been testified to during those hearings, spread over a period of almost a year. To demonstrate the accuracy of our conclusion, we quote from the record.

In the first hearing the court was informed that the plaintiff who obtained a divorce filed a petition to vacate the decree or in the alternative to modify the separation agreement which became a part of the decree by order of the court, followed by a statement of plaintiff's case:

"The Court: I want to follow this up. Did he remarry?

"Mr. Rattay: He did, your honor, within 30 days after the decree, if that is of any significance.

"The Court: Did he marry a younger or older woman?

"Mr. Rattay: I don't know, your honor.

"The Court: But he remarried? Within 30 days after?"

After some further colloquy, the court addressed defense counsel as follows:

"The Court: Well, now, then he got remarried shortly after the divorce?

"Mr. McLandrich: I don't see what bearing that has.

"The Court: You can answer my question.

"Mr. McLandrich: Yes, he got married, sir.

"The Court: Did he marry a younger woman?

"Mr. McLandrich: I don't know.

"The Court: About how old is she? How old?

"The Defendant: 41.

"Mr. Rattay: She is 41.

"The Court: Are you Mrs. Fisher? [Plaintiff]

"The Plaintiff: Yes, sir.

"The Court: How old are you?

"The Plaintiff: 44.

"The Court: 44. Not such a difference or disparity."

In the next hearing on October 22, 1964, the following took place:

"The Court: When did he remarry?

"Mr. Rattay: May 25, 1963.

"The Court: May 25, 1963. All right. What is the day of the divorce?

"Mr. Rattay: April 25, 1963, journalized on May 10, 1963."

Later in the same cross-examination the following appears:

"The Court: What date did you get remarried, sir?

"Witness: May 25, 1963.

"The Court: I want to ask a question: How old was wife number one at the time you divorced her?

"Witness: I think she was 42, possibly 43.

"The Court: How old is the woman you married?

"Witness: 41.

"The Court: What date were you divorced?

"Witness: April 25, 1963.

"The Court: When did you remarry?

"Witness: May 25, 1963.

"The Court: I see. How old did you say was the other woman?

"Witness: 41.

"The Court: Had she been married before?

"Witness: No, sir.

"The Court: This was a first marriage for this lady?

"Witness: Yes, sir."

During the hearing on December 2, 1964, there is another series of questions by the court, repetitious of the foregoing—more questions relating to the above.

During the hearing on December 16, 1964, there were one or two references to the dates of the divorce and remarriage.

The hearing of March 26, 1965, is covered by only a narrative statement as to the testimony of the defendant.

The hearing on May 14, 1965, reproduces the short direct examination of the defendant and further recross-examination of that party. The court examined the defendant as to the time

of his remarriage after the divorce, the prior marital status of the new wife and her age.

In view of the foregoing, we conclude and hold that the appellant's assignments of error are well taken and are sustained. In the ordinary case on appeal we would be content to state our ruling and let it go at that. But, in the face of the record in this action, we cannot avoid expressing our astonishment at the time consumed in a hearing on a simple petition to vacate or modify a divorce decree; the burden imposed upon counsel and the litigants in requiring six or more hearings extended over a period from July 8, 1964, to May 14, 1965; the repetitious character of cross-examination of the defendant; and the long and needless dissertations of the trial court consuming a great part of the record. This course of treatment of the parties to the action does not conform to our concept of due process of law. It is something that this court cannot condone without expressing our deep concern for our system of administering justice.

There remains for our consideration assignments of error numbers VI, VII, IX and X. They are as follows:

ASSIGNMENT OF ERROR No. VI.

"The court erred in sustaining the plaintiff's petition to vacate decree or in the alternative to modify order in that such finding is not supported by the evidence."

ASSIGNMENT OF ERROR No. VII.

"The court erred in sustaining the plaintiff's petition to vacate decree or in the alternative to modify order in that the court's finding is contrary to the weight of the evidence."

ASSIGNMENT OF ERROR No. IX.

"The court abused its discretion in making the award of alimony and child support as set forth in the order from which this appeal is being taken."

ASSIGNMENT OF ERROR No. X.

"The court committed other error which is apparent upon the face of the record."

We have indicated above our conclusion that the trial court committed prejudicial error in proceeding to hear this controversy on the merits. It was the duty of the court to try first the grounds for vacation or modification; next to deter-

mine whether plaintiff had a good cause of action; and having determined both in the affirmative, to suspend the earlier judgment pursuant to the statute, which would have resulted in a determination as a matter of law the validity of the defenses raised in the answer to plaintiff's petition; and then to have journalized its rulings. Defense counsel then would have had the privilege of filing an answer in the original action, or to have appealed the court's rulings upon the legal determination of the court's rulings. In this matter, counsel for the defendant was denied these rights.

It should be borne in mind that the separation agreement involved was signed by the parties on January 28, 1963. The action for divorce was filed thereafter and came on for hearing on April 25, 1963, instituted in the plaintiff's name, the action having been filed by the attorney whom defendant had hired, with her knowledge and consent. Plaintiff had signed the agreement after she had read it more than once. Clearly it was available to her for the period from January 28, 1963, to the date of the divorce hearing, April 25, 1963. The record discloses that she conferred with this attorney on at least one occasion, in the absence of the defendant, before she signed it.

We have carefully examined the record in the light of the findings of fact signed by the court. As we view the record, the only thing we can point out is the finding that the defendant did not disclose to his wife, the plaintiff, his annual salary and bonus; but even in this connection stands the unrefuted testimony that she joined with him in the joint income tax returns filed by the parties. The record fails to support the finding that defendant concealed assets consisting of real estate or money on deposit in Texas. Nor is there any evidence that defendant had any assets of any kind with any brokerage house, save those listed in the separation agreement.

Considering the evidence in the record as to defendant's income and the assets which he now has but did not own at the time the separation agreement was executed, we find it is impossible to justify the extent of the award made to the plaintiff by way of a modification of the decree.

We, therefore, conclude and hold that the court committed prejudicial error in the above respects and that assign-

ments of error numbers VI, VII and IX are sustained, and assignment of error number X is overruled.

The judgment is reversed and the cause is remanded to the court below for further proceeding according to law.

*Judgment reversed.*

Artl, C. J., CORRIGAN and WHITE, JJ., concur.