Middleton, J.
 

 The parties herein were married September 26, 1942. On September 6, 1947, the wife, Patricia Jelm, instituted an action for divorce against Charles R. Jelm in Cuyahoga county where the parties had resided for several years. Personal service was obtained. The divorce was granted to the wife, uncontested, on March 6, 1948. The parties had three children prior to the granting of the divorce. A fourth child was born, admittedly of the marriage, on June 6, 1948.
 

 A short time prior to the institution of the divorce case, as a result of marital difficulties, an agreement was executed between the parties relating to the custody of the children and the division of property. Immediately after service of summons in the divoree case the agreement was slightly modified. It provided that in the event of the granting of a divorce the agreement should be incorporated in and should be made part of the decree. This agreement so far as it related to the division of the property was carried out.
 

 The parties, however, did not separate. Instead, they continued to live together and to cohabit. The fourth child was conceived during this period of cohabitation after the divorce action was instituted. I©
 
 *228
 
 fact, they continued to cohabit until late in August, nearly six months after the divorce was procured by the wife. This action to vacate the divorce decree was instituted on October 14, 1948.
 

 It was asserted by the husband in his action to vacate the divorce decree that after the petition for divorce had been filed he was assured by the wife, from time to time, that she did not intend to press the divorce case; that in December 1947, when he received a registered letter from his wife’s attorney concerning the case, he questioned her about it and she told him it was a mistake and that no action would be taken in the divorce case. After her divorce decree had been procured in March 1948, she told him that they were divorced but he did not believe it and they continued to live together. On several occasions thereafter when he asked her if they were divorced she “backed down” and denied it. Finally, late in August 1948, she showed him a copy of the divorce decree and the news stunned him. They then separated. On October 5, 1948, she married Jack Helbig. He had been a principal actor in this almost unbelievable drama from the time he was usher at the wedding of the Jelms in 1942. His principal appearances on the stage occurred during the frequent absences of the husband on business during the latter years of the married life of the Jelms.
 

 The sordid details of the drama need not be related. It is, however, significant in connection with the questions now before the court to note that the divorce was granted to Mrs. Jelm in March 1948, as an uncontested decree; that she did not reveal to the trial judge the fact that she had been living with her defendant husband continuously since the institution of the divorce action; that a fourth child had been conceived during that period; and that she had no intention of ceasing to cohabit with the defendant husband. The lack of
 
 *229
 
 such intention was evidenced by her continuing to cohabit with him and concealing from him for an additional six months the fact that a divorce had been granted to her.
 

 On October 14, 1948, the husband, Charles R. Jelm, filed a petition .to vacate the decree of divorce, upon the ground that the decree was obtained through fraud. His allegation of fraud was supported by specifications substantially in harmony with the facts hereinabove stated. Answer to the petition to vacate the decree having been filed, the issues thereby joined were tried in the Common Pleas Court of Cuyahoga County, and decision of the trial court was rendered in favor of the husband, Charles R. Jelm.
 

 A motion for new trial was filed and overruled, and judgment vacating the decree of divorce was entered on April 12, 1949.
 

 Appeal from the judgment of vacation was taken to the Court of Appeals where it was affirmed.
 

 The answer of the wife to the petition for vacation of the decree denied that fraud had been perpetrated upon the court. In a motion filed by her to dismiss the petition, she denied that the court had jurisdiction to hear the petition because the decree of divorce was entered at a previous term of court. It was argued in both the trial court and in the Court of Appeals that the decree of divorce could not be attacked, even for fraud, after the expiration of the term of court in which the decree of divorce was entered, and that the Common Pleas Court was without jurisdiction to entertain the petition of the defendant husband to vacate that decree. It is that question which is now before this court. Under the law of Ohio, can a decree of divorce, entered in an uncontested case, be vacated for fraud in its procurement by petition to effect such vacation filed during a term of court subsequent to the
 
 *230
 
 term in which the decree of divorce was entered?
 

 For convenience we refer to the original plaintiff, who is now contesting the judgment to vacate, as Mrs. Jelm, notwithstanding her marriage to Jack Helbig as hereinabove recited. It is earnestly .argued on behalf of Mrs. J elm that, since the decision of this court in the case of
 
 Parish
 
 v.
 
 Parish,
 
 9 Ohio St., 534, which decision was rendered at the December term, 1859, it has continuously been the law of Ohio that a decree of divorce cannot be vacated at a subsequent term of court. In that case this court did so hold. Should this court now follow that precedent or should it over rule that decision because of changed social conditions and present constitutional provisions and legislative enactments? This court recognizes that the marriage relationship and the stability of laws with respect to that relationship are matters of great public concern and that the legal precedents which have been followed as the law of the state with respect to the finality of divorce should not be lightly overthrown. On the other hand, since the conclusion reached in the
 
 Parish case
 
 was grounded upon what was then considered public policy, a restudy of the problem is justified to determine public policy as of the present. What was in the interest of public policy or conducive to public welfare 100 years ago may not be so today. It is interesting to note that in the
 
 Parish case
 
 eminent counsel for the complainant who sought to vacate the divorce decree conceded that he could find but few authorities on which he could rely and in his brief he cited only two such authorities. Today, decisions of courts of last resort in the majority of states in the union support his contention and hold that a divorce decree can be vacated after term for fraud. Ohio now stands almost alone as entertaining the opposing view.
 

 
 *231
 
 In
 
 Harter
 
 v.
 
 Harter,
 
 5 Ohio, 318, decided in 1832, Judge Hitchcock, delivering the opinion of the court, stated that no statute in Ohio was more abused than the statute concerning divorce and alimony and lamented the impositions practiced upon the court by those seeking divorce, the hearing of divorce cases ex parte and the difficulty of determining the truth in divorce cases because of the friendliness of the witnesses to the applicant. His statement evidenced a concern with respect to divorce obviously not shared by a large portion of the public today.
 

 In a study of this problem consideration should first be given to the Constitution of Ohio and to the statutes. No help in the solution of the problem is received from the Constitution. The Constitution of 1802 did not mention divorce. The Constitution of 1851, as amended to date, mentions divorce only in Section 32, Article II, which prohibits the granting of divorce by the General Assembly.
 

 There was no common-law right of divorce. Divorce is purely a matter of statute.
 
 DeWitt
 
 v.
 
 DeWitt,
 
 67 Ohio St., 340, 66 N. E., 136. Divorce was authorized by statute and laws governing the Northwest Territory. In December 1804, the Legislature of the newly created state of Ohio passed an act authorizing divorce and vested sole jurisdiction with respect thereto in the Supreme Court. (3 Ohio Laws, 177.) Amendatory acts were passed in 1822 and 1824. In 1840 a comprehensive divorce law was enacted (38 Ohio Laws, 37), stating grounds for divorce substantially as they appear in present-day statutes. By the enactment of March 13, 1843 (41 Ohio Laws, 94), the Common Pleas Court was given concurrent jurisdiction with the Supreme Court in divorce matters and it was then provided for the first time with respect to divorce actions “that, in all cases commenced in the Court of Common
 
 *232
 
 Pleas, no appeal shall be obtained from the decree, but the same shall be final and conclusive.” This was a legislative recognition of the social philosophy that divorce decrees should not be disturbed once they were granted. The provision that “the same shall be final and conclusive” remained in the statute for only ten years. On March 11, 1853 (51 Ohio Laws, 377), the General Assembly again passed a comprehensive divorce act repealing all previous laws on the subject. It contained the provision “that in the case of petition for divorce, or petition for alimony alone, no appeal shall be allowed from any judgment or order of the Court of Common Pleas to the District Court. ’ ’ The next following section thereof, however, contained a somewhat contradictory provision authorizing appeal from any final judgment or order in an action for alimony alone. These provisions remained in the statutes until 1879 when the first Revised Statutes came into existence as a result of the labors of the commission, which had been created by the General Assembly in 1875, to revise and consolidate the general laws of the state. The divorce code appeared in the first edition of the Revised Statutes as Section 5689
 
 et seq.,
 
 and those sections became Section 11979
 
 et seq.,
 
 General Code.
 

 At no time since 1853 has the divorce code contained any provision that a divorce decree shall be final and conclusive. At all times since 1843 the code has contained the provision denying the right of
 
 appeal
 
 with respect to divorce decrees and that provision remains in the present code as Section 12002. It reads:
 

 “No appeal shall be allowed from a judgment or order of the Common Pleas Court under this Chapter, except from an order dismissing the petition without final hearing, or from a final order or judgment grant
 
 *233
 
 ing or refusing alimony, or in cases under the next preceding section. When judgment is rendered for both divorce and alimony, the appeal will lie- only to so much of the judgment as relates to the alimony. When an appeal is taken by the wife, she shall not be required to give bond.”
 

 Section 6, Article IV of the Constitution, as amended in 1912, did not mention divorce or specifically authorize appeal with respect to divorce. Nevertheless, appeal was permitted under judicial construction of that Section of the Constitution as so amended. Such judicial construction evidences the changing philosophy with respect to divorce.
 

 Section 6 of Article IV of the Constitution, as amended in 1912, defined the jurisdiction of the Court of Appeals and read in part:
 

 “The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the Courts of Common Pleas, superior courts and other courts of record within the district as may be provided by law *
 
 *
 

 In
 
 Cincinnati Polyclinic
 
 v.
 
 Balch,
 
 92 Ohio St., 415, 111 N. E., 159, this court held:
 

 “1. Section 6, Article IV of the Constitution of Ohio as amended September 3, 1912, confers jurisdiction upon the Courts of Appeals to review, affirm, modify or reverse the judgments of the Court of Common Pleas, Superior Courts, and other courts of record within the district. The General Assembly has no power to enlarge or limit the jurisdiction conferred by the Constitution of the state, but may provide by law for the method of exercising that jurisdiction.”
 

 In
 
 Zonars
 
 v.
 
 Zonars,
 
 101 Ohio St., 518, 130 N. E.,
 
 *234
 
 943, the law as announced in
 
 Cincinnati Polyclinic
 
 v.
 
 Balch, supra,
 
 was applied in a divorce case.
 

 In
 
 Chandler & Taylor Co.
 
 v.
 
 Southern Pacific Co.,
 
 104 Ohio St., 188, 135 N. E., 620, this court considered the meaning of the terms “judgment” and “final order” as those terms appeared in the above-quoted constitutional provision which defined the appellate jurisdiction of the Court of Appeals. The first paragraph of the syllabus of that case is as follows:
 

 “Such interpretation must be given a provision of the Constitution as will promote the object of the people in adopting it, and narrow and technical definitions of particular words should be avoided. In obedience to this rule the term ‘judgments’ appearing in Section 6, Article IV of the Constitution as amended in 1912, is used in its broad and generally accepted meaning and not in that restricted meaning formerly given it by the Legislature in Section 11582, General Code. The term comprehends all decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of parties affected thereby. ’ ’
 

 In
 
 Weeden
 
 v.
 
 Weeden,
 
 116 Ohio St., 524, 156 N. E., 90S, this court was called upon to decide whether the-right of
 
 appeal
 
 previously held to exist with respect to all
 
 judgments
 
 included the right of appeal with, respect to divorce decrees. In a comprehensive opinion written by Judge Allen the court held that it did so-apply. The syllabus of that case reads:
 

 “Under Section 6, Article IV, of the Ohio Constitution, a court of appeals has jurisdiction to reverse a judgment entered in a divorce action by a court of' common pleas upon the ground that such judgment is contrary to the weight of the evidence.”
 

 The
 
 Weeden case
 
 was approved and followed in
 
 Campbell
 
 v.
 
 Campbell,
 
 128 Ohio St., 590, 193 N. E., 405.
 

 
 *235
 
 As stated by Judge Allen in the
 
 Weeden case,
 
 there was in the past a distinction between judgments and decrees, the term “judgment” being applied to the judicial decision and final determination of the rights of the parties in an action at law, and the term “decree” being applied to the judicial decision and final determination of the rights of the parties in an equitable action. The opinion then recites the common characteristics of a “judgment” and a “decree of divorce,” reaching the conclusion that the divorce decree contains every element of a judgment. In reaching this conclusion the opinion quotes with approval the first paragraph of the syllabus of the
 
 Chandler case,
 
 hereinabove quoted, which holds that the term “judgment” comprehends all decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of the parties affected thereby.
 

 The effect of those decisions is to unqualifiedly establish that a divorce decree is a
 
 judgment
 
 and is not to be distinguished from judgments rendered in cases other than divorce actions, in the absence of statutory provisions creating such distinction.
 

 As hereinabove indicated, Section 12002 remained in the General Code without specific repeal, after the Constitutional Amendment of 1912, and it is still in the Code.
 

 What was the effect of the amendment in 1944, effective January 1, 1945, of Section 6, Article IV of the Ohio Constitution? That amendment changes the wording of the clause defining the jurisdiction of the Court of Appeals to read:
 

 “The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and such jurisdiction as may be provided by law to review, affirm, modify, set aside, or reverse judgments or final orders *
 
 *
 
 *.”
 

 
 *236
 
 Does this constitutional amendment revitalize Section 12002, General Code? We do not think so. The 1944 amendment to Section 6, Article IV, provides also: “All laws now in force, not inconsistent herewith, shall continue in force until amended or repealed * * *.” Section 12002, General Code, was not then in force because its effectiveness had been destroyed by judicial construction of Section 6, Article IV, as that section appeared in the Constitution after 1912. Section 12002, General Code, has not been re-enacted.
 

 “It may be stated as a general principle that a statute existing- at the adoption of a constitution cannot be upheld if it is opposed to the plain terms of the constitution. In such case, the statute may be regarded as repealed by the constitutional provision, by implication. This is true of constitutional provisions which are self-executing.” 50 American Jurisprudence, 546, Section 540. This statement is amply supported by citations including
 
 Massey
 
 v.
 
 United States,
 
 291 U. S., 608, 78 L. Ed., 1019, 54 S. Ct., 532;
 
 United States
 
 v.
 
 Chambers,
 
 291 U. S., 217, 78 L. Ed., 763, 54 S. Ct., 434;
 
 Norton v. Board of Commrs. of Taxing District of Brownsville,
 
 129 U. S., 479, 32 L. Ed., 774, 9 S. Ct., 322,
 

 Such has also long been the law of Ohio as announced by this court.
 
 State
 
 v.
 
 Mansfield,
 
 89 Ohio St., 20, 104 N. E., 1001;
 
 State
 
 v.
 
 Cameron,
 
 89 Ohio St., 214, 106 N. E., 28;
 
 Dravo-Doyle Co.
 
 v.
 
 Village of Orrville,
 
 93 Ohio St., 236, 112 N. E., 508;
 
 State, ex rel. Rose, v. Donahey, Aud.,
 
 100 Ohio St., 104, 125 N. E., 908;
 
 State, ex rel. Hoel, Pros. Atty.,
 
 v.
 
 Brown,
 
 105 Ohio St., 479, 138 N. E., 230.
 

 This court has held that Section 6, Article IV of the Constitution, as amended in 1912, conferred jurisdiction upon the Court of Appeals directly.
 
 Cincinnati Polyclinic
 
 v.
 
 Balch, supra.
 
 There was no neces
 
 *237
 
 sity to implement that constitutional grant of power by legislation. It was self-exeenting. It repealed Section 12002, General Code. In
 
 Youngstown Municipal Ry. Co.
 
 v.
 
 City of Youngstown,
 
 147 Ohio St., 221, 70 N. E. (2d), 649 (decided December 1946), this court held that until there is legislative action which effects a change the appellate jurisdiction of the Courts of Appeals remains as it was at the time the amendment of 1944 was adopted.
 

 In
 
 Board of Elections for Franklin County
 
 v.
 
 State, ex rel. Schneider,
 
 128 Ohio St., 273, 191 N. E., 115, it was held that an act of the General Assembly which was unconstitutional at the time of enactment can be vivified only by a valid re-enactment. By parity of reasoning, a statute which was nullified by the Constitution in 1912 was not revived in 1944 by an amendment to the Constitution which amendment is not self-executing.but which merely makes possible the future valid enactment of such a statutory provision.
 

 It is, therefore, manifest that Section 12002 is of no effect, even though it remains in the General Code.
 

 Thus appears the evolutionary change in the law with respect to the right to appeal divorce cases so that the same procedure is now followed as in other classes of cases as to which appeal is authorized. Today the law with respect to
 
 appeal
 
 in divorce cases is fundamentally different from what it was in earlier times.
 

 This brings us to a consideration of Section 11631, General Code. For many years prior to 1945 that section provided:
 

 ‘ ‘ The Common Pleas Court or the Court of Appeals may vacate or modify its own judgment or order, after the term at which it was made:
 

 6 c
 
 * *
 
 m
 

 “4. For fraud practiced by the successful party in obtaining a judgment or order.”
 

 
 *238
 
 'Subsequent related sections of the General Code specified, and still specify, the procedure to be followed when the vacation of a judgment after term is undertaken.
 

 Section 11635, General Code, provides:
 

 •“The proceedings to vacate the judgment or order on the grounds mentioned in divisions four * * * of the first section in this chapter [G. C. Section 11631], shall be by petition, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and, if the party applying was defendant, the defense to the action. * * *”
 

 In the instant ease the form of the petition to vacate the decree of divorce and the procedure followed comply with the requirements of Section 11635, General -Code.
 

 In July 1945, the General Assembly amended Section 11631, General Code, effective October 11, 1945 ({121 Ohio Laws, 366). This amendment changed the (opening paragraph of that section to read:
 

 " The Common Pleas Court or the Court of Appeals may vacate or modify its own
 
 final order, judgment or decree
 
 after the term at which it was made
 
 *
 
 * *’ (Emphasis supplied.) That paragraph previously sread:
 

 “The Common Pleas Court or the Court of Appeals may vacate or modify its own
 
 judgment or order,
 
 after the term at which it was made * * *.” (Emphasis supplied.)
 

 The amendment did not change the language of subsection 4. It reads now as it did previous to the amendment, viz:
 

 “4. For fraud practiced by the successful party in obtaining a judgment or order.”
 

 Judgments of divorce were not mentioned in, and hence were not excepted from, Section 11631, General
 
 *239
 
 Code, as it existed either before or after that amendment. Such amendment is, therefore, unimportant m deciding the question now before this court.
 

 It is now settled that a divorce decree is a
 
 judgment
 
 and that the Court of Appeals has jurisdiction under the Constitution of Ohio to hear
 
 appeals
 
 with respect to divorce decrees,
 
 i. e., divorce
 
 judgments. Can it then logically he said that Sections 11631 and 11635,. General Code, do not authorize actions to
 
 vacate
 
 a
 
 judgment
 
 of
 
 divorce
 
 after term? A negative answer-can be predicated only upon the theory that public policy is best served by adhering to the principles-announced by this court in
 
 Parish
 
 v.
 
 Parish,
 
 supra.
 

 The decision of the
 
 Parish case
 
 has been followed! consistently by this court to date. Other courts of the-state have in most instances respected and followed the
 
 Parish case
 
 decision, but sometimes with great reluctance. The philosophy underlying the decision in the
 
 Parish case
 
 is that the welfare of society is best served, the marriage status is best protected, and illegitimacy of children born of marriages effected soon after the granting of divorces is best prevented, by making divorce final. We doubt that the sanctity of divorce has proved to be as beneficial to society as was previously believed. Certainly the number of divorces granted has increased tremendously in proportion to the population. The number of uncontested divorce cases and the ease with which divorce is procured are so well known that the citation of statistics is unnecessary. The sanctity of divorce has not made divorce-less popular nor has it discouraged the perpetration, of fraud in procurement of divorce. Experience indicates that it is reasonable to conclude that an applicant for divorce would be less inclined to indulge in. a fraudulent practice, produce questionable or false-testimony, or otherwise impose upon the court, if such-
 
 *240
 
 applicant knew that he or she is not protected by a rule making divorce final when granted, and that, if any fraud were practiced, the divorce could be set aside in a proper action brought within the statutory period of two years prescribed by Section 11640, G-eneral Code. Such knowledge we believe would be a deterrent to those inclined to perpetrate a fraud and would more adequately serve the public need than would the continuance of the heretofore existing sanctity of the divorce which made vacation after term impossible even for fraud.
 

 This court is convinced that the philosophy underlying the decision in the
 
 Parish case
 
 should no longer control the courts of Ohio. The
 
 Parish case
 
 no longer serves as a useful or valid precedent. We are, therefore, constrained to and we do overrule the decision in
 
 Parish
 
 v.
 
 Parish,
 
 9 Ohio St., 534.
 

 The conclusion reached in this case is in harmony with the decisions of the courts of last resort of a great majority of the states of the union. Citation of such decisions from all those courts so holding is impracticable. Comprehensive annotations containing such references will be found in 157 A. L. R., 18
 
 et seq.;
 
 27 Corpus Juris Secundum, 806
 
 et seq.;
 
 and L. R. A. 1917B, 409.
 

 There is another basis for our conclusion that the Common Pleas Court had authority to entertain this action to vacate its former judgment. That court possesses inherent authority and the power to vacate its own judgments for fraud. Independent of and without the sanction of legislative enactment, a court of general jurisdiction such as the Common Pleas Courts of Ohio has the inherent right and power to protect itself against the perpetration of a fraud. Without such right and power the courts would become impotent as the judicial branch of government. A corollary to the possession of such right and power
 
 *241
 
 is the duty to exercise such power. The procurement of a judgment by fraud is a fraud upon the court as well as upon the opposing litigant. A judgment so procured can be vacated by exercise of the inherent power of the court. The general rule to that effect is set forth in statements found in many texts and digests, including the following:
 

 “The fact that a judgment was obtained through fraud or collusion is universally held to constitute a sufficient reason for opening or vacating such judgment either during or after the term at which it was rendered. In some jurisdictions statutes confer power on the courts to vacate judgments on the ground of fraud and to regulate its exercise, although generally courts of record possess an inherent common-law power in this behalf, which is not dependent on legislation.” 49 Corpus Juris Secundum, 486, Section 269.
 

 “Fraud practiced in obtaining a judgment is sometimes specified in the statutes as one of the grounds which entitle an innocent and injured litigant to have it vacated. * * * Even if this ground were not specifically enumerated in the statute, it would generally be available to the injured party on the ground that it had occasioned the rendition of the judgment against him by surprise, or mistake, or under circumstances which as to him might well be deemed excusable neglect.” 1 Freeman on Judgments (5 Ed.), 458, Section 232.
 

 “The power to set aside judgments for fraud or collusion, though expressly granted by statute in many of the states, is not dependent upon legislative recognition. It is a common-law power, inherent in all courts of record, and may be exercised after the expiration of the term at which the judgment was rendered, on' the application of the party injured.” I Black on Judgments (2 Ed.), 489, Section 321.
 

 “And aside from legislation, the courts will gen
 
 *242
 
 erally hear motions to vacate divorce judgments on the same grounds and conditions as any other judgments, except, perhaps, that they proceed with greater caution and with more anxious care for the intervening rights of strangers. Thus, where a decree of divorce has been obtained by fraud or deceit — as where the complainant has practiced fraud or trickery to prevent the defendant from having notice of the suit, or from appearing in the action, or from answering and defending the same — the innocent party, thus deceived, may undoubtedly obtain the opening or vacating of the decree, by making a timely and proper application and showing good cause.” 1 Black on Judgments (2 Ed.), 486, Section 320.
 

 Numerous decisions of many states are cited in support of the statements of the rule above quoted. Exclusive of its application to divorce, Ohio decisions are in accord with the rule so stated.
 

 In the annotations hereinabove cited which appear in A. L. R., Corpus Juris Secundum and L. R. A. will be found numerous decisions holding that this inherent power of a court of general jurisdiction to vacate its judgment after term, because of fraud in the procurement of the judgment, applies in divorce actions and that divorce judgments are subject to the operation and application of that inherent judicial power. As illustrative, and because of the similarity of the facts to those of the instant case, we cite
 
 Chiarodit
 
 v.
 
 Chiarodit,
 
 218 Cal., 147, 21 P. (2d), 562;
 
 Womack v. Womack,
 
 73 Ark., 281, 83 S. W., 937;
 
 Baker v. Baker,
 
 217 Cal., 216;
 
 Brown
 
 v.
 
 Grove, 116
 
 Ind., 84, 18 N. E., 387.
 

 We believe that the reasons which impel this court to overrule the
 
 Parish ease
 
 justify and require the conclusion that the inherent power to vacate its judgments after term, possessed by the Common Pleas Court, extends to judgments of divorce. We believe
 
 *243
 
 that such right and power should be exercised. It is recognized, however, that such right should be exercised with caution and that a court should not be unmindful of the effect of such vacation upon innocent parties. In the instant case, the fraud was extrinsic in character. The court was informed of the fraud, which had been perpetrated, promptly upon its discovery, and seasonable application was made by petition for the vacation of the judgment of divorce. The wife who had procured the divorce had remarried before the petition to vacate the judgment was filed, but such remarriage occurred within a few weeks after the defendant husband learned that a divorce had been granted and the cohabitation of the parties to the divorce case had ceased. Furthermore, the man involved in the second marriage of the wife had knowledge of' the conduct of the wife during the pendency of the divorce action and subsequent to the granting of the divorce decree, and he was to a large extent a participant in her objectionable course of conduct. He cannot, therefore, be considered an innocent person suffering a wrong by reason of vacation of the judgment of divorce. Under the circumstances of this case we believe that the vacation of the judgment of divorce was a valid and uncontestable exercise by the Common Pleas Court of its inherent right to protect itself against perpetration of a fraud.
 

 Upon both grounds, to wit, the authority of the statutes of Ohio herein discussed and the inherent judicial power, the Common Pleas Court had the right to entertain the petition to vacate the divorce judgment in question and to vacate that judgment.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Stewart, Taft, Matthias and Hart, JJ., concur.