[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 373.]

THE STATE EX REL. PAPP *v*. JAMES, JUDGE.

[Cite as *State ex rel. Papp v. James*, 1994-Ohio-86.]

*Mandamus to remedy claimed errors arising from a divorce proceeding—Writ allowed, when.*

(No. 93-1626—Submitted March 30, 1994—Decided June 1, 1994.).

IN MANDAMUS and PROHIBITION.

_____

{¶ 1} Relator, Elizabeth A. Papp, seeks writs of mandamus and prohibition to remedy claimed errors arising from a divorce proceeding filed by her husband, Richard F. Papp. The divorce involved a custody dispute over the couple's four minor children, along with issues of child support, visitation, spousal support and property settlement. Elizabeth was originally awarded permanent custody in 1991.

{¶ 2} In August 1992, Richard moved for change of custody. Judge Thomas F. Norton, formerly of the Trumbull County Common Pleas Court, Domestic Relations Division, and the original respondent in this case, heard the matter on January 25 to 28, 1993. On January 26, Richard apparently testified that Elizabeth had struck the children. Elizabeth asked her oldest son, ten-year-old Jacob, to dispute this allegation, and he agreed to testify. Elizabeth anticipated that Judge Norton might decide to interview Jacob in chambers, and on January 27, she moved for appointment of a guardian *ad litem* and for a stay of proceedings to allow the guardian time to prepare.

{¶ 3} Judge Norton did not grant or deny Elizabeth's motions. He instead interviewed Jacob alone in chambers and allegedly pressed him to choose between his parents. Jacob apparently told Judge Norton that he did not want to choose, but ultimately indicated that he preferred to live with his mother.

**{¶ 4}** On January 29, 1993, Judge Norton granted custody of the Papps' two boys to Richard, allowing Elizabeth to retain custody of the two girls. On February 9, he issued the Papps a divorce decree that confirmed the change of custody and set visitation, along with a stipulated support and property distribution. Neither judgment stated the reason for the change of custody, and Elizabeth moved for separate findings of fact and conclusions of law on February 1 and 18, after each judgment. She represents that both motions are still pending.

**{¶ 5}** Elizabeth seeks a writ of mandamus to vacate the custody determination, to appoint a guardian *ad litem*, and to stay the custody proceedings so that the guardian can prepare for a new hearing. She also requests a writ of a prohibition to prevent the denial of her motions for appointment of a guardian and stay. In the alternative, Elizabeth asks for a writ of mandamus to order findings of fact and conclusions of law for the judgments issued on January 29 and February 9, 1993.

**{¶ 6}** Judge Norton was ordered to show cause by September 7, 1993 why the writs should not be granted, and he answered on that date. Thereafter, Elizabeth filed a notice asking that respondent, Judge Richard L. James, who was appointed to succeed Judge Norton upon his resignation, be substituted for him.

**{¶ 7}** Judge James has moved to strike Jacob Papp's statement about his interview with Judge Norton. Elizabeth has moved to strike the deposition of Elizabeth's attorney at trial, Kay Williams Young, with exhibits, and the partial transcript of the hearing held January 27, 1993.

———————————

*McTigue & Brooks* and *Donald J. McTigue*, for relator.

*Richards & Meola* and *Charles L. Richards*, for respondent.

———————————

2

*Per Curiam.*

**{¶ 8}** This case presents six issues for our review.  First,  should either party's evidence be stricken?  Second, is there a clear legal duty to appoint a guardian *ad litem* upon a parent's motion before interviewing a child in a custody dispute?  Third, is there a clear legal duty in this case to issue findings of fact and conclusions of law upon timely motion?  Fourth, does Elizabeth have an adequate remedy at law?  Fifth, should a writ of mandamus issue either to vacate the custody decree and to compel appointment of a guardian *ad litem* and a new hearing, or to order the filing of findings of fact and conclusions of law?  Sixth, is there any cause for issuing a writ of prohibition?

**{¶ 9}** For the reasons that follow, we overrule Elizabeth's motion to strike, and grant Judge James's motion to strike in part.  Moreover, we hold that (1) where the court interviews a child in a custody proceeding, R.C. 3109.04(B)(2)(a) creates a duty to appoint of guardian *ad litem* upon either parent's motion, (2) Civ.R. 52 creates a duty to issue findings of fact and conclusions of law for a decree or final order in an action tried to the court, and the January 29 custody ruling was a final order, (3) appeal is not an adequate remedy to obtain compliance with Civ.R. 52, but (4) appeal is an adequate remedy to enforce the R.C. 3109.04(B)(2)(a) duty to appoint a guardian *ad litem*, and, therefore, (5) a writ of mandamus must issue to compel the filing of findings of fact and conclusions of law for the January 29 custody order.  Finally, we hold that Elizabeth has not shown the conditions necessary for a writ of prohibition.  Accordingly, we grant a writ of mandamus to compel findings of fact and conclusions of law with respect to the custody order of January 29, 1993, but deny her other requests for extraordinary relief.

### Motions to Strike Evidence

**{¶ 10}** In addition to a description of his interview with Judge Norton, Jacob Papp's statement indicates his parental preference.  Judge James maintains that we

cannot accept the statement without running afoul of R.C. 3109.04(B)(3), which states:

"No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns regarding the allocation of parental rights and responsibilities concerning the child. No court, in determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child or for purposes of resolving any issues related to the making of that allocation, shall accept or consider a written or recorded statement or affidavit that purports to set forth the child's wishes and concerns regarding those matters."

{¶ 11} Judge James argues that this action involves "issues related to the making of [the parental rights and responsibilities] allocation." Elizabeth responds that R.C. 3109.04(B)(3) applies only in proceedings instituted to make the parental rights and responsibilities allocation, which this case is not.

{¶ 12} Elizabeth's restrictive view is technically correct, but we find the language of R.C. 3109.04(B)(3) and policy underlying it strong enough to justify a broad construction. This statute was obviously intended to protect children from unsupervised demands that they choose between their parents, and the harm such demands may cause is a valid concern in any proceeding. R.C. 3109.04(B)(3), however, does not prohibit all written or recorded statements or affidavits of a child, just those that "purport[] to set forth the child's wishes and concerns regarding * * * [the allocation of parental rights]." Thus, we apply this statute here to strike Jacob's expressions of parental preference, but we accept his statement to prove that he was interviewed privately by Judge Norton.

{¶ 13} Elizabeth moves to strike Judge James's evidence as having been filed out of rule. S.Ct.Prac.R. VIII(7) requires all evidence to be filed "within twenty-eight (28) days of the time of or for filing a reply," which Elizabeth

4

calculates to have been on November 2, 1993. Judge James filed his evidence on January 31, 1994, along with the merit brief he was granted leave to file.

{¶ 14} Judge James was permitted to file his brief late because after his appointment to Judge Norton's seat, Elizabeth served her merit brief on the Trumbull County Prosecuting Attorney -- not Judge Norton's attorney, who now represents Judge James. We also consider this confusion over counsel of record sufficient cause for overruling Elizabeth's motion to strike, and for granting Judge James's motion for leave to file his evidence instanter.

## Guardian *Ad Litem*

{¶ 15} Judge Norton did not rule on Elizabeth's motion for appointment of a guardian *ad litem* prior to interviewing Jacob in chambers. R.C. 3109.04(B) provides, in part:

"(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.

"(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:

"(a) *The court*, in its discretion, may and, *upon the motion of either parent*, *shall appoint a guardian ad litem for the child*.

"* * *

"(c)  The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview."  (Emphasis added.)

**{¶ 16}** This statute plainly requires appointment of a guardian *ad litem* upon the motion of a parent if the court intends to privately interview a child in a custody dispute.  Elizabeth has thus established the first condition for a writ of mandamus—a clear right to the performance of a clear legal duty.  *State ex rel. The Fairfield Leader v. Ricketts* (1990), 56 Ohio St.3d 97, 102, 564 N.E.2d 486, 491.

Findings of Fact and Conclusions of Law

**{¶ 17}** Judge Norton stated his reasons for changing custody of the Papp children from the bench on January 28, but he did not explain his decision in the January 29 order.  His February 9 divorce decree also did not explain the change of custody, and he did not rule on Elizabeth's motions for findings of fact and conclusions of law.

**{¶ 18}** Civ.R. 52 provides in part:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."

"[A] trial court has a mandatory duty under Civ. R. 52 to issue findings of fact and conclusions of law upon request timely made." *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 173, 23 OBR 336, 338, 492 N.E.2d 146, 148.  "A commentary from the bench, leading up to pronouncement of a decision, is neither adequate to fulfill the requirements of Civ.R. 52, nor is it adequate to provide a

disappointed party a solid basis on which to ground an appeal." *Id.* at 173, 23 OBR at 338, 492 N.E.2d at 148, fn. 3.

{¶ 19} Moreover, "Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury." *Werden v. Crawford* (1982), 70 Ohio St.2d 122, 24 O.O.3d 196, 435 N.E.2d 424, syllabus.

{¶ 20} Here, Elizabeth's first Civ.R. 52 motion was timely, having been filed on February 1, within four days of the January 28 change-of-custody announcement. However, Judge James argues that Elizabeth had been allowed only temporary custody up to that time and that the January 29 order was issued upon Richard's motion to modify temporary custody. Under Civ.R. 52, findings of fact and conclusions of law are required only for judgments and are unnecessary upon all motions other than those filed pursuant to Civ.R. 41(B)(2) (involuntary dismissal). Thus, Judge James claims that findings of fact and conclusions of law were unavailable prior to the divorce decree issued on February 9.

{¶ 21} Elizabeth justifiably disputes the representation that she had not been awarded permanent custody—the answer to her complaint admits this allegation. She also urges a distinction between motions for change of custody and other motions. *Werden* recognized this distinction when it suggested that custody modifications, which require a showing of changed circumstances, R.C. 3109.04(E)(1)(a), are analogous to judgments based on factual determinations. *Id.*, 70 Ohio St.2d at 123-124, 24 O.O.3d at 197-198, 435 N.E.2d at 425-426.

{¶ 22} *Werden*, however, involved a post-decree motion to modify custody, and Judge James contrasts this with Richard's motion, which was filed and decided before the Papps' divorce decree. But in rejecting the theory that Civ. R. 52 never applies to rulings on motions, *Werden* did not focus on when the motion was filed. It focused instead on the nature of the ruling, which implicates the main

requirement in Civ.R. 52—that a request for findings of fact and conclusions of law be based on a judgment. Thus, whether a permanent custody order is modified before or after a divorce decree, the order must qualify as a judgment for Civ.R. 52 to apply.

{¶ 23} "Judgment," as defined by Civ.R. 54(A), "includes a decree and any order from which an appeal lies as provided in R.C. 2505.02." Elizabeth, therefore, must show that an appeal from the January 29 custody order was possible pursuant to R.C. 2505.02. R.C. 2505.02 defines three types of final orders, but only one— "an order that affects a substantial right made in a special proceeding"—applies here. *Evicks v. Evicks* (1992), 79 Ohio App.3d 657, 661, 607 N.E.2d 1090, 1093. But, see, *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169 (temporary custody order coupled with finding of neglect in child neglect actions is a final order as defined by R.C. 2505.02 because it "affects a substantial right in an action which in effect terminates the action and prevents a judgment").

{¶ 24} Custody proceedings affect substantial rights. *Id.* at 157, 556 N.E.2d at 1171-1172. Thus, the January 29 custody order was final (and Civ.R. 52 applies) if the order was entered in a special proceeding. *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, syllabus, established a new standard for this determination:

"Orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02. (*Amato v. Gen. Motors Corp.* [1981], 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, overruled.)"

"There was no common-law right of divorce. Divorce is purely a matter of statute." *Jelm v. Jelm* (1951), 155 Ohio St. 226, 231, 44 O.O. 246, 248, 98 N.E.2d 401, 404. Custody actions between divorcing parents were also unknown at common law, and today exist only pursuant to statute. *Soyk v. Soyk* (1975), 45 Ohio App.2d 319, 321, 74 O.O.2d 532, 533, 345 N.E.2d 461, 463.

**{¶ 25}** Similarly, early Ohio courts did not have equity jurisdiction in suits for alimony, property division, or custody. *DeWitt v. DeWitt* (1902), 67 Ohio St. 340, 347, 66 N.E. 136, 138; *Marleau v. Marleau* (1917), 95 Ohio St. 162, 115 N.E. 1009; *Miller v. Miller* (1951), 154 Ohio St. 530, 43 O.O. 496, 97 N.E.2d 213, paragraph one of the syllabus. Rather, "[a]ctions for divorce and alimony were in England originally within the jurisdiction of the ecclesiastical courts, but in this state that jurisdiction has been conferred by and limited to the provisions of statutes." *Marleau*, *supra*, at 164, 115 N.E. at 1009.

**{¶ 26}** Divorce, therefore, has been described as a "special statutory proceeding," *Dansby v. Dansby* (1956), 165 Ohio St. 112, 113, 59 O.O. 129, 133 N.E.2d 358, 359, and this status also extends to ancillary claims for custody. See *In re Murray*, *supra*, 52 Ohio St.3d at 161, 556 N.E.2d at 1175 (Douglas, J., concurring in syllabus and judgment). Thus, the January 29 order changing permanent custody of the Papp children was a final, appealable order under R.C. 2505.02, and Elizabeth was entitled, under Civ.R. 52, to request findings of fact and conclusions of law.

**{¶ 27}** Elizabeth filed her second motion for findings of fact and conclusions of law on February 18, 1993. Judge James alternatively argues that this motion was untimely because it was not filed before the February 9 divorce decree or within seven days of the January 28 change-of-custody announcement, as Civ.R. 52 requires. We do not reach this argument because we have already held that Elizabeth's first motion entitled her to compliance with Civ.R. 52.

**{¶ 28}** Judge James also urges us to deny Elizabeth's last request in the conclusion of her brief—to "order Respondent to issue findings of fact and conclusions of law by a date certain with respect to all other matters decided by the February 9, 1993 final divorce decree." He complains that Elizabeth stipulated to these matters and submits the January hearing transcript as proof. In response, Elizabeth relies on her motion to strike this evidence.

**{¶ 29}** The stipulations entered as to the Papps' support arrangements and property distribution properly appears in this record due to our having overruled Elizabeth's motion to strike. Moreover, we are convinced by other evidence that both Elizabeth's motions for findings of fact and conclusions of law were designed to gain an explanation of Judge Norton's custody ruling, and no more. We, therefore, reject Elizabeth's plea for relief affecting issues beyond custody of the Papp children.

**{¶ 30}** Judge James's last objection to compliance with Civ.R. 52 is that he did not preside over the Papps' divorce and custody proceedings and, therefore, cannot issue findings of fact and conclusions of law. He cites *Vergon v. Vergon* (1993), 87 Ohio App.3d 639, 622 N.E.2d 1111, which held that (1) a trial judge cannot issue a memorandum opinion in a divorce action after his term has ended, and (2) his successor cannot render the judgment entry of divorce where credibility was an issue during the trial and the trial judge did not file findings of fact and conclusions of law.

**{¶ 31}** *Vergon*, however, did not leave the divorcing couple without a remedy. Rather, the court of appeals remanded the cause for a new trial before the judge who would rule in the divorce. *Vergon*, therefore, does not preclude Judge James from complying with Civ.R. 52; it is instead authority for him to conduct further proceedings as he carries out the duty to file findings of fact and conclusions of law.

Adequate Remedy and Extent of Mandamus Relief

**{¶ 32}** For a writ of mandamus to issue, Elizabeth must also show that she has no adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50-51, 451 N.E.2d 225, 226. Judge James initially argues that Elizabeth's remedy is to invoke the domestic relations court's continuing jurisdiction and move for another change of custody. Elizabeth's goal here, however, is to enforce duties owed to her in the underlying

custody proceeding, not to commence new proceedings at which she must justify further modification by showing yet another change of circumstances since the original custody award. R.C. 3109.04(E)(1)(a). Accordingly, we do not consider a new motion for change of custody to be an adequate remedy in this case.

{¶ 33} Judge James submits proof that Elizabeth appealed the January 29 custody order on February 5, 1993 and that her appeal was later dismissed for failure to prosecute. He argues that the availability of this appeal precludes extraordinary relief. Elizabeth does not dispute having already attempted one appeal from the January 29 custody order; she argues instead that she has never been issued a final order that would permit a viable appeal. Elizabeth relies on *Walker v. Doup* (1988), 36 Ohio St.3d 229, 522 N.E.2d 1072, syllabus, which states:

"When a timely motion for findings of fact and conclusions of law has been filed in accordance with Civ.R. 52, the time period for filing a notice of appeal does not commence to run until the trial court files its findings of fact and conclusions of law."

{¶ 34} In *Walker*, the trial court entered judgment and, approximately six weeks later, filed findings of fact and conclusions of law in response to a timely request. An appeal was taken within thirty days of that order, but the appeal came more than thirty days after the original judgment entry. The court of appeals dismissed the appeal as untimely, but we reversed and remanded, holding that a timely motion filed under Civ.R. 52 suspends the appeal time in App.R. 4. *Id.* at 230, 522 N.E.2d at 1074. We explained that "a timely motion for separate findings of fact and conclusions of law under Civ.R. 52 prevents an otherwise final judgment from becoming final for the purposes of App.R. 4 until the findings of fact and conclusions of law are filed by the trial court." *Id.* at 229, 522 N.E.2d at 1073.

{¶ 35} Our statement in *Walker* procedurally precludes Elizabeth from appealing the refusal to comply with Civ.R. 52. Consistently, App.R. 4(B)(2)

unequivocally states that upon a timely Civ.R. 52 motion, "the time for filing a notice of appeal begins to run as to all parties when the order disposing of the motion is entered." Accordingly, we hold that Elizabeth has no adequate remedy by way of appeal to contest the failure to file findings of fact and conclusions of law.

**{¶ 36}** Appeal is inadequate, however, only to the extent that Elizabeth lacks an order that is procedurally subject to appeal. Error in custody proceedings, whether substantive or procedural, is reviewable on appeal. See, *e.g.*, *Gardini v. Moyer* (1991), 61 Ohio St.3d 479, 575 N.E.2d 423 (custody modification), and *In re Markham* (1990), 70 Ohio App.3d 841, 845, 592 N.E.2d 896, 899-900 (reversal of custody decree in part due to trial court's interview of young children in chambers). Thus, once findings of fact and conclusions of law are filed, Elizabeth may appeal the failure to appoint a guardian ad litem in the ordinary course of the law.

Prohibition

**{¶ 37}** In light of the fact that an appeal will lie upon compliance with Civ.R. 52, a writ of prohibition cannot issue unless Elizabeth shows that the domestic relations court patently and unambiguously lacked jurisdiction over custody of the Papp children. *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 351, 544 N.E.2d 657, 661. Elizabeth does not genuinely contest jurisdiction. Thus, she has failed to show the conditions necessary for a writ of prohibition to issue.

Conclusion

**{¶ 38}** Based on the foregoing, Elizabeth is entitled to findings of fact and conclusions of law for the custody order issued January 29, 1993, and Judge James has a clear duty to comply with Civ.R. 52 for this purpose. Accordingly, we issue a writ of mandamus to compel findings of facts and conclusions of law, pursuant to Elizabeth's alternative request for a writ of mandamus. Her remaining requests for extraordinary relief are denied.

*Writ allowed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS and F.E. SWEENEY, JJ., concur.

WRIGHT and RESNICK, JJ. concurs separately.

PFEIFER, J., concurs in part and dissents in part.

_____

**ALICE ROBIE RESNICK, J., concurring.**

**{¶ 39}** The majority opinion suggests that Judge James must conduct further proceedings to produce findings of fact and conclusions of law, but does not explicitly order a new hearing. Since the credibility of witnesses plays a major role in the resolution of this case, it will be impossible for Judge James to issue adequate findings of fact and conclusions of law based on a record made by Judge Norton. Therefore, the most efficient course of action would be (1) to grant outright a writ of mandamus vacating the custody decision, (2) to order Judge James to commence a new custody hearing, and (3) to require Judge James to appoint a guardian *ad litem* upon motion of either party when and if the children are interviewed.

**{¶ 40}** I do not join the majority's discussion regarding the appealability of the January 29, 1993 custody order. There is no need to consider this issue because, regardless of whether the January 29 custody order was final and appealable, the divorce decree of February 9, 1993 was a final judgment. Even if Elizabeth Papp's motions for findings of fact and conclusions of law were designed only to gain an explanation of the custody ruling, that ruling became an appealable order when the

divorce decree was entered, except that the time for appealing the custody determination was dependent on the trial court's issuance of the requested findings of fact and conclusions of law.

WRIGHT, J., concurs in the foregoing concurring opinion.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 41} I would deny all of relator's requests for extraordinary relief. While I voted to grant relator's initial request for relief in *State ex rel. Papp v. Norton* (1993), 66 Ohio St.3d 162, 610 N.E.2d 979, I refuse to be part of petitioner's apparent plan to second-guess every action taken by the trial judge in petitioner's divorce proceeding.

{¶ 42} I would also direct the trial court to award reasonable attorney fees to Richard Papp for any costs incurred as a result of preparing for this action before our court.

_____