O’Donnell, J.,
dissenting.
{¶ 15} Respectfully, I dissent.
{¶ 16} This case presents two principal issues for our consideration: one, whether a court has inherent authority to vacate a judgment in a criminal case to correct a fraud perpetrated against it by a defendant and two, whether double jeopardy bars further prosecution of that defendant. My views are that the court does have such authority and that double jeopardy does not bar further prosecution of the defendant who purported to commit fraud against the court and who expressly waived that right.
{¶ 17} Appellee, Kareem Gilbert, perpetrated a fraud on the trial court by providing a 50-page written statement to the state and agreeing to testify truthfully about criminal violations of his father in exchange for a favorable plea to a lesser included offense and later recanting that statement. Because he did so, the court vacated his guilty plea to a lesser but included offense and the judgment of conviction. Double jeopardy is not at issue in this case, because Gilbert expressly waived this constitutional protection.
Facts and Procedural History
{¶ 18} Around 1:00 a.m. on the morning of October 16, 2008, Kareem Gilbert, Bryan Austin, and Victor Davis were near the intersection of Elder and Republic Streets in Cincinnati, Ohio. Gilbert began to argue with Austin, and Austin hit Gilbert with a meatball sub sandwich that spilled onto Gilbert’s white T-shirt. Gilbert left, retrieved a handgun, returned, and shot Austin numerous times, killing him. The state alleged that Gilbert later shot and killed Davis.
{¶ 19} On March 12, 2009, a Hamilton County grand jury indicted Gilbert on two counts of aggravated murder with firearm specifications, one count of witness intimidation, and two counts of having a weapon while under disability. Gilbert pleaded not guilty to all charges.
{¶ 20} About 14 months later — on May 18, 2010 — the parties entered into a plea agreement, which states:
*155 2. The Defendant agrees to provide truthful, complete, and accurate information during the investigation and prosecution of any criminal offenses of which he has relevant information;
3. The Defendant agrees to testify truthfully, completely, and accurately in any legal proceeding in which he is called to testify as a witness, including but not limited to any juvenile proceeding, grand jury, or trial, whether civil or criminal in nature;
4. Specifically, the Defendant agrees to give truthful and complete testimony as a State’s witness against Ruben Jordan. The Defendant states the statement he provided to the Cincinnati Police Department on May 17, 2010, regarding Mr. Jordan was truthful and complete. The Defendant additionally agrees to testify truthfully before the Hamilton County Grand Jury. * * * Furthermore, the Defendant agrees to testify concerning any criminal violations against any and all individuals targeted in these investigations resulting from cooperation. * * *
5. In exchange for and in consideration of the aforementioned cooperation, the Hamilton County Prosecutor’s Office agrees to resolve the Defendant’s pending cases in the following manner: Defendant will plea to Count one as voluntary manslaughter with a firearm specification, count two weapon under disability, and count three intimidation of crime victim/witness. The State will dismiss all remaining counts and specifications. The State would enter into an agreed prison sentence of 18 years in the Ohio Department of Corrections. The Defendant further states that he has been promised nothing in addition to that which is stated herein, and that this document fully incorporates the complete understanding of the parties;
6. The Defendant agrees and understands that completion of the terms of this agreement is to be determined by the Hamilton County Prosecutor’s Office. If it is determined by the Hamilton County Prosecutor’s Office that at any time the Defendant fails to cooperate fully, refuses to testify, or testifies falsely in any proceeding, intentionally gives false, misleading, or incomplete information or testimony, compromises his value as a witness, or otherwise violates any terms of this agreement, then the Hamilton County Prosecutor’s Office may reinstate the original charges against the Defendant as well as any additional charges which may be appropriate. The parties will be returned to their respective positions prior to the execution of this agreement with the expressed exception that the proffer statement taken of the Defendant is admissible in the prosecution against him, as provided in Paragraph Two: (¶ 2) above. Additional *156 ly, the Defendant specifically waives an argument of double jeopardy or speedy trial rights with regard to any charges against him.
7. The Defendant waives any Constitutional or statutory rights to a speedy trial during the life of this agreement;
8. The Defendant waives any Constitutional right against twice being placed in jeopardy with respect to any offenses that the State may prosecute if this agreement is terminated.
{¶ 21} In accordance with this agreement, Gilbert withdrew his not guilty pleas and pleaded guilty to one count of voluntary manslaughter with a firearm specification, one count of having a weapon while under a disability, and one count of witness intimidation, with the parties agreeing to an aggregate 18-year prison term. At the May 18, 2010 sentencing hearing, Gilbert specifically agreed to abide by the plea agreement. In exchange for the reduction of one aggravated murder charge to voluntary manslaughter and the dismissal of the other aggravated murder charge and a charge of having a weapon while under disability, the state represented to the court that Gilbert
agreed and entered into a written agreement with the State to provide truthful, complete, and accurate information during the investigation and to testify in the prosecution of his father, Ruben Jordan, who [was] charged with the aggravated murder of Victor Davis.
By entry dated May 24, 2010, the trial court convicted Gilbert of three offenses, dismissed two charges, and imposed the recommended sentence.
{¶ 22} Later, the state moved to vacate the plea agreement. At the hearing on its motion to vacate, it argued that Gilbert had failed to give truthful testimony against his father. The prosecutor represented that Gilbert “recanted his 50-page — some of it — -statement, especially as it pertained to Mr. Jordan, him eyewitnessing the murder of Mr. Davis and saying his father was the one that killed him. I think he said they were both at home * * * watching a football game.”
{¶ 23} Gilbert did not object to the state’s motion, and his counsel conceded that Gilbert
broke his contract with the State by, at some point, giving incomplete information or perhaps inaccurate testimony at the time that the plea agreement was made and thereby not following through with that contract. And so, for that reason, he doesn’t object to the plea being vacated, but it *157 is his position that he gave truthful testimony during the trial against his father.
Gilbert’s counsel also stated: “It is his position that he told the truth on the stand and that he had lied prior to that to the State and to the officers in order to get a better deal for himself.”
{¶ 24} The court granted the state’s motion and set aside Gilbert’s plea. Pursuant to a second plea agreement, Gilbert pleaded guilty to one count of murder with a firearm specification and one count of having a weapon while under disability, with a recommended aggregate sentence of 18 years to life. The court convicted Gilbert of the two offenses and imposed the recommended sentence.
{¶ 25} Gilbert appealed. His counsel filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and moved to withdraw as appellate counsel. The appellate court determined that legal points arguable on their merits remained to be resolved, granted the motion to withdraw, appointed new counsel, and ordered briefing on whether the trial court “had authority to grant the state’s motion to vacate Gilbert’s pleas and to reconsider and modify its May 2010 criminal sentence, and on any other matter counsel may discover in a diligent review of the record.” 2012-Ohio-1366, 2012 WL 1072749, at ¶ 10. The court of appeals subsequently reversed the trial court judgment, determining that the trial court “lacked the authority to reconsider the May 2010 valid final judgment.” 2013-Ohio-238, 2013 WL 359660, ¶ 21.
{¶ 26} The state appealed to this court. We accepted jurisdiction on two propositions of law raising these issues: whether, when a party breaches a plea agreement, a trial court has authority to vacate the plea and whether the Double Jeopardy Clause barred the reprosecution of Gilbert, when he “understood that if he breached the agreement the original charges could be reinstated.”
Law and Analysis
{¶ 27} “Fraud connotes perjury, falsification, concealment, misrepresentation.” Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946). While Gilbert maintained that he testified truthfully at his father’s trial, the record suggests that he acted fraudulently in negotiating his first plea agreement. He essentially admitted to making misrepresentations to the state as demonstrated by his attorney’s statement that Gilbert gave “incomplete information and perhaps inaccurate testimony at the time that the plea agreement was made” and he “had lied * * * to the State and to the officers in order to get a better deal for himself.”
*158 {¶ 28} Gilbert also perpetrated a fraud on the trial court because, by fraudulently entering into the plea agreement, he tampered with the administration of justice and subverted the integrity of the judicial process as a whole. See Coulson v. Coulson, 5 Ohio St.3d 12, 15, 448 N.E.2d 809 (1983) (“ ‘Fraud upon the court’ is an elusive concept. * * * It is generally agreed that ‘ * * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense.’ 11 Wright & Miller, Federal Practice and Procedure (1973) 253, Section 2870”).
(¶ 29} A federal court has inherent power to vacate a judgment upon proof that a fraud has been perpetrated on it. Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In Chambers, the United States Supreme Court stated:
This “historic power of equity to set aside fraudulently begotten judgments,” Hazel-Atlas [Glass Co. v. Hartford-Empire Co.], 322 U.S. [238] at 245, 64 S.Ct. [997, 88 L.Ed. 1250 (1944)] is necessary to the integrity of the courts, for “tampering with the administration of justice in [this] manner * * * involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.” Id, at 246, 64 S.Ct., at 1001.
{¶ 30} In the context of divorce, this court has established a trial court’s authority to vacate a judgment after a party has committed a fraud upon the court. Jelm v. Jelm, 155 Ohio St. 226, 98 N.E.2d 401 (1951), paragraph two of the syllabus; Van DeRyt v. Van DeRyt, 6 Ohio St.2d 31, 36, 215 N.E.2d 698 (1966) (a court “does have inherent power to vacate after term a judgment * * * which is voidable for fraud or collusion”). In Van DeRyt at 36, we recognized:
A court draws the power to vacate from the reason for its existence — to render justice; for where fraud or collusion is practiced on a court, the court ceases to function as a court and its judgment becomes an official stamp lent to the subversive intentions of the abusing parties. To protect its integrity, a court has inherent power to crush the fruits of fraud and collusion.
{¶ 31} Notwithstanding any commitment this court may have to the principle of finality of judgments, see majority opinion at ¶ 8, such a pledge cannot oversha *159 dow its duty to preserve the integrity of the judicial system and “crush the fruits of fraud,” Van DeRyt at 36.
{¶ 32} In my view, a trial court has inherent authority to vacate a judgment in a criminal case due to a fraud committed upon it, apart from its authority to reconsider a valid, final judgment when a void sentence has been imposed or when a judgment contains a clerical error.
{¶ 33} The majority’s holding that once “a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant’s guilty plea and sentence based upon the defendant’s alleged violation of a plea agreement,” majority opinion at ¶ 13, conflates the concepts of a court’s inherent power and its jurisdiction. As early as 1896, this court recognized that there is a difference between a court’s inherent power and its jurisdiction. In Hale v. State, 55 Ohio St. 210, 213, 45 N.E. 199 (1896), we stated:
The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will.
{¶ 34} Article IV, Section 4(A) of the Ohio Constitution provides that there “shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state,” and Section 4(B) establishes that “courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law.” Pursuant to R.C. 2931.03, a court of common pleas “has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas.” The trial court convicted Gilbert in May 2010 in accordance with its original jurisdiction.
{¶ 35} The record shows that Gilbert did not object to the trial court’s exercise of subject matter or personal jurisdiction at the hearing regarding the state’s motion to vacate. “ ‘Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, “ * * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * ’ ” Pratts v. Hurley, 102 Ohio St.3d 81, *160 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting State ex rel. Pizza v. Rayford, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting Sheldon’s Lessee v. Newton, 3 Ohio St. 494, 499 (1854). Because Gilbert did not challenge the trial court’s exercise of jurisdiction after subject matter and personal jurisdiction were perfected, he forfeited any claim of jurisdictional error, absent plain error. Crim.R. 52(B); State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23. However, in this case, no plain error exists because, when the trial court vacated the May 2010 judgment, it properly exercised jurisdiction of the cause pursuant to its inherent authority and Gilbert acquiesced to its exercise of personal jurisdiction.
Joseph T. Deters, Hamilton County Prosecuting Attorney, and Melynda J. Machol, Assistant Prosecuting Attorney, for appellant.
Ravert J. Clark, for appellee.
{¶ 36} Finally, I disagree with the majority’s view that the state’s argument related to double jeopardy in its second proposition of law “is not an affirmative argument * * * [and] it is moot.” Majority opinion at ¶ 12. While the appellate court determined that Gilbert’s assignment of error asking that court to determine whether the trial court’s order violated Gilbert’s constitutional protections against double jeopardy was moot, 2013-Ohio-238, 2013 WL 359660, ¶ 20, we accepted jurisdiction of the state’s second proposition of law, which states: “The double jeopardy clause did not bar the prosecution of [Gilbert] where both parties bargained for and received substantial benefits, and [Gilbert] understood that if he breached the agreement the original charges could be reinstated.” 135 Ohio St.3d 1458, 2013-Ohio-2285, 988 N.E.2d 578. The state’s second proposition of law thus asserts an affirmative argument. See Black’s Law Dictionary 70 (10th Ed.2014) (affirmative means “[supporting the existence of certain facts”).
{¶ 37} Second, because in Gilbert’s first plea agreement, he expressly waived any double jeopardy argument as to any charges against him as well as any protection from twice being placed in jeopardy relating to any offenses that the state might bring against him if the agreement were terminated, double jeopardy is not a concern in this case. See State v. D.W., 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 24 (a party may waive constitutional rights as long as the waiver is made knowingly and intelligently and is an intentional relinquishment of a known right).
{¶ 38} Accordingly, I would reverse the judgment of the court of appeals because a court has inherent authority to reconsider its judgment to protect the integrity of the judicial system when a defendant perpetrates a fraud upon it.
Kennedy, J., concurs in the foregoing opinion.
*161 Ron O’Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.
Michael DeWine, Attorney General, and Matthew A. Kanai, Assistant Attorney General, urging reversal for amicus curiae Attorney General of Ohio.
Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.