This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Patti Nutt (f.k.a. Patti Scarbrough), appeals the decision of the Lorain County Court of Common Pleas, Domestic Relations Division, denying her motion to modify custody. We affirm.
 I.
On December 11, 1987, Russell Scarbrough and Patti Nutt were married in Lorain County, Ohio. During their marriage, they had two children, Ashley, who was born on November 1, 1989, and Lauren, who was born on February 14, 1992. After approximately nine years of marriage, the parties were granted a divorce on November 20, 1996. As part of the divorce decree, Mr. Scarbrough was designated the residential parent and legal custodian of Ashley and Lauren.
Both parties subsequently remarried. In March 1997, Russell and Suzette Scarbrough were married. Suzette has two children from a prior marriage: Brittany, born on August 25, 1984, and Aaron, born on July 14, 1987. In October 1999, Ms. Nutt married Kenneth Nutt, who does not have any children from his prior marriages.
On January 13, 2000, Ms. Nutt moved to modify custody and requested that she be designated the residential parent and legal custodian of Ashley and Lauren. Subsequently, the trial court ordered the preparation of a home study investigation report pursuant to R.C. 3109.04(C) and appointed a guardian ad litem for the children. Prior to the hearing on October 23 and 24, 2000, the trial court conducted an in camera interview of Ashley and Lauren. At the hearing, Ms. Nutt and Mr. Scarbrough each called several witnesses to testify. In a judgment entry journalized on November 9, 2000, the trial court denied Ms. Nutt's motion to modify custody, stating: "This matter came before the Court on a contested hearing on the 23rd and 24th days of October, 2000. Based upon the evidence presented, the Court dismisses the Motion to Modify Custody." This appeal followed.
 II.
Ms. Nutt asserts five assignments of error for review. We will discuss each in due course, consolidating her first and second assignments of error and her fourth and fifth assignments of error, as they share similar issues of law and fact.
 A. First Assignment of Error The trial court's Order was contrary to law in [that] it failed to comply with applicable law codified in R.C. 3109.04(B)(1) and R.C. 3109.04(E)(1)(a) which mandates that the best interest of the child should be the criterion by which the court allocates or modifies the allocation of parental rights and responsibilities. In allocating parental rights and responsibilities, R.C. 3109.04(F)(1) requires the court to consider all relevant factors, including the ten factors set forth in the statute[.]
 Second Assignment of Error The trial [c]ourt erred in that the Judgement [sic] was unsupported by sufficient evidence and contrary to the weight of the evidence. Every judgement [sic] must be supported by sufficient evidence. In addition, a judgement [sic] may be reversed by an appellate court as against the manifest weight of the evidence. Sufficiency is a test of adequacy-whether the evidence is legally sufficient to support the judgement [sic]. Weight implies a consideration of the greater weight of the evidence. The evaluation of evidence and the credibility of witnesses is primarily for the trier of fact. Where susceptible to multiple interpretations, the evidence will generally be construed consistently with the judgement [sic]. The testimony and evidence, seeing that it came mostly from the testimony of the Defendant and was so direct and clear in favor of the Plaintiff/Appellant and was evidence that was heavily weighted to change of custody from father to mother based on the best interest of the child standards. The evidence was sufficient to support a change of custody. The Judgement [sic] in this case is contrary to the evidence presented at trial.
In her first and second assignments of error, Ms. Nutt essentially argues that the trial court abused its discretion in determining that it was in Ashley and Lauren's best interest to remain with their father and not to modify custody. She also asserts that the trial court's decision was against the manifest weight of the evidence.[1] We disagree.
A trial court has broad discretion in its allocation of parental rights and responsibilities. Donovan v. Donovan (1996), 110 Ohio App.3d 615,618. A reviewing court may not overturn a trial court's determination regarding the allocation of parental rights and responsibilities absent an abuse of discretion. Id. An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Additionally, when the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3; see, also, Anthony v.Wolfram (Sept. 29, 1999), Lorain App. No. 98CA007129, unreported, at 6 (applying the criminal manifest weight standard in determining whether a trial court's award of custody was against the manifest weight of the evidence).
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
R.C. 3109.04 governs the allocation of parental rights and responsibilities. Pursuant to R.C. 3109.04(E)(1)(a), when a party moves the court to modify an existing order which allocates parental rights and responsibilities,
 [t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [the child's] residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Thus, a modification of a prior decree allocating parental rights and responsibilities is not warranted absent: (1) a change in circumstances; (2) the best interest of the child weighing in favor of such modification;[2] and (3) one of the factors enumerated in R.C.3109.04(E)(1)(a) being present. Zinnecker v. Zinnecker (1999),133 Ohio App.3d 378, 385; Holm v. Smilowitz (1992), 83 Ohio App.3d 757,773.
In the present case, at the conclusion of the hearing, the trial court found that there had been a change in circumstances since the previous order regarding custody, but "d[id] not find based on the evidence presented that it would be in the best interest of the minor children to make a reallocation of parental rights and responsibilities." Consequently, Ms. Nutt challenges the trial court's determination regarding the best interest of the children.[3] R.C. 3109.04(F)(1) sets forth a nonexclusive list of considerations in determining a child's best interest:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to his home, school, and community;
 The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
At the hearing, Ms. Nutt expressed concern over the perceived disparate treatment of Ashley and Lauren by their father and Suzette. She stated that since Mr. Scarbrough remarried, he has given Suzette and her children preferential treatment and does not do anything with Lauren and Ashley. As an example (among others), Ms. Nutt related that Mr. Scarbrough took Suzette and her children to an amusement park a few times, but did not take Ashley and Lauren. Mr. and Mrs. Scarbrough explained that the tickets had been given to Brittany and Aaron as gifts from their grandparents and that Lauren and Ashley went to an amusement park on other occasions with their friends. Mr. Scarbrough testified that they tried to keep everything as equal as possible between the four children and that the entire family participated in activities together, such as having picnics and going to the park. Wendy Twerdy, Mr. Scarbrough's neighbor,[4] also recalled certain incidents where she felt that Mr. Scarbrough gave Suzette and her children preferential treatment.
Ms. Nutt also believed that the Scarbrough residence was overcrowded and that there was significant disharmony in the Scarbrough household, which was having a negative impact on Ashley and Lauren. Mr. Scarbrough and his family lived in Mr. Scarbrough, Sr.'s house. Mr. Scarbrough's two adult brothers periodically lived there as well. Consequently, Brittany, Ashley, and Lauren were forced to share a bedroom; however, according to witnesses, the bedroom was large and each girl had her own bed. Ms. Nutt noted that Ashley and Lauren would each have their own room if she were awarded custody. Ms. Nutt took issue with the fact the Mr. Scarbrough paid little or no rent to his father and as of yet did not purchase his own home.
Regarding disharmony in the Scarbrough household, the parties agreed that there was animosity between Suzette and Mr. Scarbrough, Sr., that resulted in arguments and the occasional use of profanity. Mr. Scarbrough stated that the adults tried to keep it from the children, but admitted that Lauren and Ashley probably heard parts of arguments. In addition, Mr. Scarbrough, Sr. once grabbed Brittany by the wrist because she would not give him the television remote and left a bruise on her arm. Furthermore, according to Mr. and Mrs. Scarbrough, Mr. Scarbrough, Sr. would not permit Suzette and her children to eat dinner downstairs at the table, but allowed Ashley and Lauren to do so. Mr. Scarbrough stated that the situation was not always that bad, but had recently deteriorated, and therefore, he was actively searching for a new home. Ms. Nutt expressed skepticism that he would ever move out of his father's home.
Ms. Nutt also complained about Suzette's and Brittany's treatment of Ashley and Lauren. There was testimony that Suzette called the children names, such as calling Lauren a "fat pig" when she wanted a snack. Suzette denied making such a comment or ever calling Lauren and Ashley inappropriate names. There was also testimony that Brittany was mean to her stepsisters and may have on one occasion physically struck Ashley. However, Denise O'Leary, who prepared the home study investigation report for the court, testified that the girls did not relate any animosity toward Suzette and were affectionate with Brittany when she made an unannounced visit to the Scarbrough home. Mr. and Mrs. Scarbrough also stated that the family gets along well together.
Ms. Nutt felt that Mr. Scarbrough was not looking out for their daughters' safety because he used to make them ride in the back of the family hatchback without seatbelts because the car was not large enough to seat the entire family. Mr. Scarbrough admitted that the automobile was too small, and consequently, purchased a minivan so that every passenger could have a seatbelt. Additionally, both parents recalled specific incidents in which they believed the other parent did not behave appropriately in interacting with their daughters or each other.
Mr. Scarbrough has been employed as a communication officer with the Lorain County Sheriff's Department for the past eleven years. He testified that he has taken an active interest in his daughters' lives. He stated that he sometimes would choose not to attend certain school functions so that Ms. Nutt could become more involved with their children. Moreover, Ms. Nutt admitted that Mr. Scarbrough voluntarily increased her visitation with Ashley and Lauren. Mr. Scarbrough stated that he plans to move out of his father's home, but would like to stay in the same school district so that Ashley and Lauren can be with their friends at school. Ms. and Mr. Nutt testified that if they were given custody of the children, the children would attend a different school, but that they would make an effort to allow Lauren and Ashley to see their friends, like the Twerdy children.
The guardian ad litem testified that he had reservations about certain things that Ms. Nutt had done in the past, such as falsely accusing Mr. Scarbrough of sexually abusing his daughters during the divorce proceedings. Ms. Nutt testified that she believes that Mr. Scarbrough is not Lauren's biological father. In his report, the guardian ad litem
opined that it was not in Lauren's best interest to raise the issue of paternity at this time. Additionally, Ms. Nutt was in arrears in her child support payments. She explained that she was in arrears because her former employer failed to withhold the appropriate amount from her paycheck and that she plans to pay the money soon. Recently, however, she and Mr. Nutt either purchased or entered into a lease purchase agreement for a new, more spacious, home.
It is important to note that witnesses testified that both Ms. Nutt and Mr. Scarbrough loved Ashley and Lauren and that the children loved their parents. The guardian ad litem recommended that Mr. Scarbrough remain the residential parent of Lauren and Ashley, although he had some reservations about Mr. Scarbrough's remarriage. The guardian ad litem
also recommended that Ms. Nutt be awarded liberal visitation with her daughters.
After thoroughly reviewing the evidence, we conclude that the trial court did not abuse its discretion in denying Ms. Nutt's motion to modify custody of Ashley and Lauren. Furthermore, we find that the evidence adduced at the hearing was sufficient to support the trial court's decision and that the trial court's denial of Ms. Nutt's motion to modify custody was not against the manifest weight of the evidence. Accordingly, Ms. Nutt's first and second assignments of error are overruled.
 B. Fourth Assignment of Error That the trial court erred when it ignored the Best Interest of the Child Standard as expressed in R.C. 3109.04(B)(1), in applying the law to the evidence.
 Fifth Assignment of Error Whether the trial court abused its discretion. The exercise of discretion must be guided by relevant statutory factors-in this case-best interest of the child. An abuse of discretion may occur where a relevant factor is not considered or where an important factor is given sufficient [sic] weight. Failure to take relevant factors into account or explain the application thereof may require reversal or remand. In this case the trial court failed to take many relevant factors into account and f[a]iled to explain the application thereof. In fact, the Judgement [sic] Order was written by Appellee's attorney and then adopted by the trial court.
In her fifth assignment of error, Ms. Nutt argues that the trial court abused its discretion by failing to explain the application of the facts of her case to the statutory factors in determining the best interest of Ashley and Lauren. She specifically points to the fact that the trial court's judgment entry was drafted by Mr. Scarbrough's trial attorney and was subsequently signed by the trial court.[5] Ms. Nutt further contends that the trial court abused its discretion by not considering relevant statutory factors in determining the best interest of Ashley and Lauren.[6] Similarly, in her fourth assignment of error, Ms. Nutt avers that the trial court failed to apply the appropriate standard in determining that it was in the children's best interest to remain with their father, and therefore, the trial court committed an error of law, which this court reviews de novo. These assignments of error lack merit.
First, Ms. Nutt argues that the trial court abused its discretion by failing to explain the application of the facts of her case to the statutory factors in determining the best interest of Ashley and Lauren. We disagree.
Civ.R. 52 governs findings by the court and provides in relevant part:
 When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.
The Ohio Supreme Court has stated that "`Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury.'" State ex rel. Papp v. James
(1994), 69 Ohio St.3d 373, 377, quoting Werden v. Crawford (1982),70 Ohio St.2d 122, syllabus; see, also, Civ.R. 75(A).
In the present case, the record indicates that Ms. Nutt did not request separate findings of fact and conclusions of law, and therefore, the trial court was not required under Civ.R. 52 to issue separate findings of fact and conclusions of law. Accordingly, we cannot conclude that the trial court erred in failing to set forth findings of fact and conclusions of law, or otherwise, explain its decision.
Next, Ms. Nutt argues that the trial court abused its discretion by not considering relevant statutory factors in determining the best interest of Ashley and Lauren and that the trial court erred as a matter of law when it failed to apply the appropriate legal standard in determining that it was in the children's best interest to remain with their father. Apparently, Ms. Nutt believes that the trial court either did not apply the appropriate standard or failed to consider certain statutory factors, because, according to Ms. Nutt, the evidence clearly and overwhelmingly does not support a determination that it was in the children's best interest to remain with their father.
This court has previously stated that "[a]bsent a request for findings of fact [pursuant to Civ.R. 52], this court will presume that the trial court properly applied the best interest test to the facts before it."Anthony, supra, at 5; see, also, Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 211-12. Here, Ms. Nutt failed to timely request findings of fact and conclusions of law pursuant to Civ.R. 52. Seeinfra. At the conclusion of the hearing, the trial court indicated that it reviewed the evidence and applied the appropriate standards set forth in the Ohio Revised Code in determining that it would not be in the best interest of the minor children to make a reallocation of parental rights and responsibilities. Furthermore, as previously discussed, the trial court did not abuse its discretion in deciding that it was in the children's best interest to remain with their father. Accordingly, we presume that the trial court applied the correct standard and considered the appropriate factors in reaching its decision. Ms. Nutt's fourth and fifth assignments of error are overruled.
 C. Third Assignment of Error The trial court erred when it interfered with the examination of the court investigator, when examined about the thoroughness of her report. That without an explanation of the judgement [sic] it is unknown how much weight was given to the report. R.C. 3109.04(C) and Civil Rule 75(D) permit a court to cause an investigation to be made as to the character, family relations, past conduct, earning ability and financial worth of each parent. The decision is within the sound discretion of the court. The report must be signed by the investigator, who shall be subject to cross-examination by either parent concerning the contents of the report. The court may consider the report, but cannot base its decision solely on the report.
 The language of both R.C. 3109.04(C) and Civil Rule 75(D) implicitly gives the trial court the authority to admit custody investigation reports as evidence, since they can be ordered by the court and the investigator is subject to cross examination. Over Appellant's objection, Appellant's cross examination was severely limited. Appellant, over her objections was not allowed to cross examine the witness, in order to demonstrate that the report was flawed and lacked the thoroughness need[ed] to help the court make a proper determination regarding the allocation of parental rights and responsibilities. It is unknown to Appellant if this report was entered into evidence by the court itself, as a finding of fact and conclusion of law was not submitted by the court in its judgment order.
In her third assignment of error, Ms. Nutt avers that the trial court erred in limiting her cross-examination of Denise O'Leary, regarding her preparation of the home study investigation report pursuant to R.C.3109.04(C) and Civ.R. 75(D). She argues that because her cross-examination was limited, she was unable to elicit testimony showing that the report was flawed and lacked the thoroughness necessary to making an allocation of parental rights determination. We disagree.
"To constitute reversible error, it is necessary that the error affects the substantial rights of the complainant." Durgan v. Ohio Bur. Of Emp.Serv. (1996), 110 Ohio App.3d 545, 553, citing Civ.R. 61. Here, the trial court did not explain its decision, and Ms. Nutt did not request findings of fact and conclusions of law under Civ.R. 52; consequently, this court cannot determine how much weight, if any, was given to the home study investigation report. Moreover, the report, itself, apparently was not admitted into evidence at the hearing and was not made part of the record on appeal. This court is, therefore, unable to determine whether any prejudice resulted to Ms. Nutt as a result of the claimed error.[7] See Civ.R. 61. Additionally, the trial court's decision is supported by evidence other than aforementioned report. Ms. Nutt's third assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ WILLIAM G. BATCHELDER
SLABY, J., WHITMORE, J. CONCUR.
[1] Ms. Nutt also purports to argue sufficiency of the evidence; however, the substance of her argument is one of weight.
[2] R.C. 3109.04(B)(1) also requires the trial court to "take into account that which would be in the best interest of the children" when modifying an existing order which allocates parental rights and responsibilities.
[3] We note that a trial court speaks through its journal entries and that an oral pronouncement of a judgment is not binding. In re Adoptionof Gibson (1986), 23 Ohio St.3d 170, 173, fn. 3. Further, "[a] commentary from the bench, leading up to pronouncement of a decision * * * is [not] adequate to provide a disappointed party a solid basis on which to ground an appeal." Id.
[4] Ms. Nutt knew Ms. Twerdy because they were neighbors when Ms. Nutt was married to Mr. Scarbrough.
[5] Additionally, Ms. Nutt reasserts that the trial court abused its discretion in denying her motion to modify custody, as the evidence clearly demonstrated that the best interest of the children was to be placed with their mother. As discussed infra, the trial court did not abuse its discretion in denying Ms. Nutt's motion to modify custody.
[6] Ms. Nutt does not specify the statutory factors which she believes the trial court failed to consider.
[7] This court does not express an opinion as to whether the trial court limited Ms. Nutt's cross-examination and whether that constituted error.