[Cite as *Boron v. Boron*, 2012-Ohio-4264.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KORENA BORON, | ) | |
| | ) | CASE NO. 11 CO 25 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| ERIC VAN BORON, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                             Court, Case No. 09 DR 585.


JUDGMENT:                    Dismissed.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Anne Magyaros
                             The Gallery Building
                             516 East Washington Street
                             Chagrin Falls, OH 44022


For Defendants-Appellant:     Attorney Matthew Giannini
                             1040 South Commons Place
                             Suite 200
                             Youngstown, OH 44514


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                             Dated: September 11, 2012

DeGenaro, J.

**{¶1}** Defendant-Appellant, Eric Van Boron, appeals the July 18, 2011 decision of the Columbiana County Court of Common Pleas, Domestic Relations Division, ordering two properties owned by Eric and Plaintiff-Appellee, Korena Boron, to be sold by absolute auction during their divorce proceedings and appointing a special master to oversee that sale. On appeal, Eric argues that the trial court abused its discretion in ordering the properties sold by absolute auction rather than by a private sale. He further contends that the trial court lacked statutory authority to appoint a special master because the parties had not failed to comply with an order or judgment of the court. Upon review, this appeal is dismissed for lack of a final appealable order.

## Facts and Procedural History

**{¶2}** This case has an active, litigious history, which we will limit here to the motions and orders pertinent to this appeal. Eric and Korena were married on August 16, 1996, and no children were born as issue of this marriage. Relevant to this appeal, the parties owned real estate, including the marital home at 2164 Pearce Circle, Salem, Ohio ("Pearce Circle"); vacant land at 1074 Highway 25, Menlo, Iowa ("Menlo, Iowa property"); Pure Gold Stables at 3225 and 3228 State Route 45, Salem, Ohio ("Pure Gold"); and a condominium at 1319 Pembrooke Drive #C, Salem, Ohio ("Pembrooke").

**{¶3}** On October 6, 2009, Korena filed a complaint for divorce, requesting inter alia, division of the marital property. On November 23, 2009, Korena filed an amended complaint for divorce, adding eight defendants, which she claimed were businesses owned or controlled by Eric. On January 13, 2010, Eric filed an answer and counterclaim. Korena filed an answer to Eric's counterclaim on January 29, 2010. On June 1, 2010, Eric filed a motion for sale of the martial residence, Pearce Circle. Korena opposed this motion on June 18, 2010.

**{¶4}** The matter came for a pretrial hearing before the magistrate on June 21, 2010 on Eric's motion for sale of the martial residence. The magistrate subsequently issued an order on June 21, 2010 that all four properties be immediately listed for sale with the net proceeds to be placed in escrow pending further order of the court. The magistrate directed the parties to list the properties with a mutually agreed upon realtor

within two weeks, but if the parties could not reach an agreement, the magistrate would choose a realtor.

{¶5} On July 1, 2010, Eric filed an "Objection to [June 21, 2012] Magistrate's Decision." On August 3, 2010, Korena filed a brief in opposition to Eric's objections. On August 4, 2010, Eric filed a motion to withdraw his objections to the magistrate's decision, which the trial court granted the next day.

{¶6} By March of 2011, the parties had not listed any of the properties for sale, and the magistrate issued an order on March 15, 2011 that the parties shall immediately list the four properties for sale in accordance with the June 21, 2010 magistrate's order.

{¶7} On May 3, 2011, Korena filed a motion for show cause, alleging that Eric had failed to comply with the March 15, 2011 magistrate's order. She claimed in part that Eric had not provided any listing agreements for the properties, and that she had procured a listing agreement, which he refused to execute. On May 12, 2011, Eric filed a notice of compliance with order, stating that he had provided sale listing agreements to opposing counsel. He also claimed that he had provided discovery documents to opposing counsel and had paid all spousal support arrearage.

{¶8} Following a hearing on May 12, 2011, the magistrate noted that none of the four properties had been listed for sale as previously ordered. The parties had produced proposed listing agreements, but they could not agree on a realtor. The magistrate ordered the parties to sign listing agreements within seven days: for Pearce Circle with Northwood Realty, as proposed by Korena; for Pembrooke and Pure Gold with Mayo and Associates, as proposed by Eric; and for the Menlo, Iowa property with a realtor selected by Eric.

{¶9} The matter came before the trial court on multiple issues and the court issued a judgment entry on May 27, 2011. The court also set a hearing for further review on June 9, 2011. At that hearing, the court would consider compliance with these orders and the issue of the appraisal and auction, sale, or listing for sale of the properties.

{¶10} On June 2, 2011, Korena filed objections/motion to set aside the May 18, 2011 magistrate's decision, alleging inter alia, that the magistrate erred in ordering

Pembrooke and Pure Gold to be sold by Mayo and Associates; and seeking an order that Northwood Realty list Pembrooke and that Kiko Associates list Pure Gold. Noting that no transcript was taken of the hearing before the magistrate, Korena attached an affidavit from her counsel in support of her objections/motion to set aside. Counsel stated that at the May 12, 2011 hearing, Korena provided complete listing agreements for Pembrooke and Pearce Circle. The agent for Northwood Realty contacted Eric to discuss the listing agreements, and Eric hung up on the agent. Further, counsel stated that at the hearing, Eric provided three incomplete listing agreements with Mayo and Associates. Eric's agent made no attempts to contact Korena.

**{¶11}** Following the hearing on June 9, 2011, the trial court issued a judgment entry on June 10, 2011 directing the parties to finalize the listings for the four properties by June 24, 2011. If the listings were not completed as ordered, the court would consider the appointment of an independent realtor or auctioneer.

**{¶12}** On July 1, 2011, the matter came before the trial court to hear arguments on Korena's objection to the magistrate's decision relating to Pure Gold and Pembrooke. Korena's counsel explained that at the magistrate's hearing, she provided complete listing agreements for Pearce Circle and Pembrooke; whereas, opposing counsel provided a listing agreement for Pembrooke with the commission, the address of the property, and the agent's named signed at the bottom but no contact information, marketing analysis, comparables, or listing price. Counsel explained that Eric provided two listing agreements for Pure Gold after the May 18, 2011 magistrate's decision, one listing was blank and one was for $500,000. Counsel stated that she had never seen any documents signed by Eric.

**{¶13}** Korena wanted Kiko Associates to sell Pure Gold because of the property's oil and gas considerations and Kiko Associates' experience with agricultural properties. Counsel also stated that Korena had not had access to Pure Gold for almost two years, although Eric refuted this claim.

**{¶14}** The court then admitted Korena's exhibits, including two that were introduced at the hearing before the magistrate: a listing agreement for Pembrooke with

Northwood Realty and a proposal from Northwood Realty for Pembrooke, which included the comparables to show how the pricing was determined. Korena also introduced a supplemental exhibit containing the auction proposal by Kiko Associates for Pure Gold.

{¶15} Eric's counsel then explained that his client's listing agreements were blank because the parties had not yet agreed on a price. Eric preferred to use Mayo and Associates because it had been in business since the 50's, whereas Northwood Realty had only been in the area for a year to 18 months. Counsel explained that Mayo and Associates was ready to sell the properties as long as Korena would sign the agreements. The agent from Mayo and Associates had contacted Korena, but she never returned the call. Counsel also explained that auctioning Pure Gold was not desirable because an auction would not produce the best price and would involve substantial costs.

{¶16} The trial court granted a motion to withdraw by Eric's former counsel, although the court noted that there had been a "revolving door of attorneys" in this case. The court stated it would not grant any more continuances if the parties obtained new counsel. At the end of the hearing, the trial court took the objection to the magistrate's decision under advisement.

{¶17} On July 5, 2011, the trial court issued a judgment entry ordering Eric to provide his proposed listing agreements for Pure Gold and Pembrooke by July 6, 2011. The court also noted that the parties had signed a listing agreement for Pearce Circle with Northwood Realty, and the Menlo, Iowa property had been listed for sale by Mayo and Associates.

{¶18} On July 18, 2011, the trial court issued a judgment entry modifying the May 18, 2011 magistrate's order. The trial court ordered that Kiko Associates sell Pure Gold and Pembrooke at absolute auction no later than September 30, 2011. The court directed that after payment of costs and fees, the net sale proceeds would be held in the escrow account of Kiko Associates until further order of the court. The court also ordered that if Pearce Circle or the Menlo, Iowa property did not sell by the time the listing agreements expire, the court would consider absolute auction of those properties. In a separate judgment entry on that same day, the trial court appointed a special master to

oversee the absolute auction process of Pure Gold and Pembrooke.

**{¶19}** On July 29, 2011, Eric filed a motion for a stay of the trial court's July 18, 2011 judgment pending appeal, which the trial court denied. Eric filed a timely notice of appeal with this court on August 10, 2011. On August 17, 2011, Eric filed a motion for a stay with this court, which Korena opposed. On September 12, 2011, this court granted the motion for stay of the trial court's July 18, 2011 judgment.

**{¶20}** On March 30, 2012, this court issued a judgment entry sua sponte raising the question of whether the orders appealed in this matter are final appealable orders as defined by R.C. 2505.02, and granted the parties 30 days to file jurisdictional memorandums. Eric filed a jurisdictional memorandum in support of final appealable order on April 17, 2012. Korena did not file a memorandum.

**{¶21}** Section 3(B), Article IV of the Ohio Constitution vests this court with jurisdiction to hear appeals only from final orders or judgments. Unless an order meets one of the definitions found in R.C. 2505.02, the order is not final and appealable. The second definition of a final order in R.C. 2505.02(B) is at issue here: "(2) An order that affects a substantial right made in a special proceeding * * *."

**{¶22}** As divorce is not a right found in the common law, rather a creation by statute, it is a special proceeding for the purposes of R.C. 2505.02(B)(2). *State ex rel. Papp v. James*, 69 Ohio St.3d 373, 379, 632 N.E.2d 889 (1994). Thus, because this is a divorce action, if the July 18, 2011 judgment affects a substantial right, then it is a final order.

**{¶23}** R.C. 2505.02(A)(1) defines a "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." "A substantial right is, in effect, a legal right that is enforced and protected by law." *State v. Coffman*, 91 Ohio St.3d 125, 127, 742 N.E.2d 644 (2001). An order which affects a substantial right is one which, if not immediately appealable, would foreclose appropriate relief in the future. *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

**{¶24}** In the instant case, the trial court ordered the parties to sell a portion of their

marital property during the course of the divorce proceedings; having initially ordered the parties to do so over a year and a half ago. The time has long run for either party to appeal the order that the four properties be sold. In fact, it can be gleaned from the record that neither party opposed the sale order, rather they could not agree on who to engage to sell the properties. The monetary value that Eric would receive from the sale of his property is an issue. However, an order is only final and appealable if it "affects" a substantial right. A trial court has broad discretion in allocating marital assets. *Neville v. Neville*, 99 Ohio St.3d 275, 791 N.E.2d 434, 2003-Ohio-3624, ¶ 5; *Stevens v. Stevens*, 23 Ohio St.3d 115, 120, 492 N.E.2d 131 (1986). Moreover, under R.C. 3105.171(J)(2), "[t]he court may issue any orders * * * that it determines equitable, including * * * [a]n order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court."

{¶25} Eric claims that a private sale, rather than an auction, would allow the parties to receive the best market price for the properties. He also contests the court's statutory authority to appoint a special master to oversee the auction. In his jurisdictional memorandum, Eric argues that the trial court's judgment affects the parties' substantial right of ownership in the martial property. He argues that if the trial court's judgment entry is not immediately appealable, he will be foreclosed from appropriate relief because the sale of marital property cannot be undone if the court's order is later found to be erroneous. He compares his case to an order of sale in a foreclosure action or an order confirming sale of property by a receiver.

{¶26} However, the cases Eric cites are distinguishable because he claims error in the method of sale and the appointment of the special master, not the actual sale order. For example, in *Joseph v. Joseph*, 5th Dist. No. CA-7126, 1988 WL 8490 (Jan. 25, 1988), in a divorce decree, the trial court ordered the parties to liquidate their business assets and real estate but deferred other issues for later determination. *Id.* at *1. The appellate court compared this order to an order of sale in a foreclosure and found that the order affected a substantial right, explaining that "[t]he sale of the business assets would be an

event from which the trial court and the parties could hardly retrench in the event it was determined the judgment was in error." *Id.* at *3. This court has also held that an order confirming the sale of property by a receiver was a final appealable order. *Dairymens' Co-operative Sales Co. v. Frederick Dairy Co.*, 16 Ohio Law Abs. 17 (7th Dist. 1933). In *Dairymens'*, this court explained:

> The Common Pleas Court ordered a sale of the entire assets of this dairy company. If that was not an order from which appeal or error could be prosecuted, nothing could be done, and the administration of the estate would thereafter follow to whatever final determination might be reached, and if, as a matter of fact, the sale should not have been made and this remained by subsequent developments, it would then be absolutely too late to remedy the error or the damage which might be done. That is to say, if there is any right to determine the legality or propriety of the sale to this purchaser, it necessarily must come through the exercise of such right following such action and before the further progress of the case. *Id.* at 19.

{¶27} Here, if Eric does not immediately appeal these issues, he will not be foreclosed from appropriate relief in the future. At this point in the proceedings, the trial court has not made a final determination of property division or spousal support issues. The trial court has made a decision with respect to a portion of the marital estate, akin to issuing temporary support orders, which are not appealable. Once the matter comes before the court for final resolution, Eric may present evidence of the fair market value of the properties to demonstrate his financial loss, if any, from the auction. The trial court, then, in its discretion, can construct the property division and spousal support orders to compensate Eric for any loss of fair market value in the properties, the auction costs, and the fees for the special master. If the trial court does not provide Eric relief in its final divorce decree, he may then appeal the judgment at that time.

{¶28} Because the trial court's judgment does not affect a substantial right, and Eric would not be foreclosed from appropriate relief in the future, the judgment is

interlocutory, which this court has no jurisdiction to review.  Accordingly, this appeal is dismissed for lack of a final appealable order.

Donofrio, J., concurs.

Vukovich, J., concurs.